NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

                                  Chapter 7

Michael Rodger Brown,

                                  Case No. 18-10617-JLG

                Debtor.
-----------------------------------------------------------------x

**MEMORANDUM DECISION AND ORDER DENYING
JENNIFER BROWN'S MOTION FOR
EXAMINATION PURSUANT TO FED. R. BANKR. P. 2004**

**APPEARANCES**:

Fischer Porter & Thomas, P.C.
560 Sylvan Avenue, Suite 3061
Englewood Cliffs, NJ 07632
By:    Arthur "Scott" L. Porter, Jr.

*Counsel for Jennifer Brown*


Saul Ewing Arnstein & Lehr LLP
1270 Avenue of the Americas
Suite 2005
New York, NY 10017
By:    Dipesh Patel

*Counsel for the Plaintiff*

**HON. JAMES L. GARRITY, JR.
UNITED STATES BANKRUPTCY JUDGE**

Introduction

Jennifer Brown ("Jennifer") is the current spouse of Michael Brown, the chapter 7 debtor herein (the "Debtor"). They are parties to an action for divorce and ancillary relief (the "Matrimonial Action") that is pending in the Supreme Court of the State of New York Matrimonial Term (the "State Court"). A matter at issue in that action is the equitable distribution of marital assets among Jennifer and the Debtor. Jennifer contends that the Debtor has failed to account for millions of dollars of those assets, and that Howard Brown ("Howard"), the Debtor's father, has information that will assist her in locating those assets. Jennifer has deposed both the Debtor and Howard (and obtained document discovery from them) in the Matrimonial Action on the whereabouts of those assets. The matter before the Court is Jennifer's motion pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004") for leave to depose Howard on the matters at issue in the Matrimonial Action (the "Motion").[1] Howard objects to the Motion (the "Objection").[2] For the reasons set forth herein, the Motion is DENIED.

Jurisdiction

The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334(a) and 157(a), and the standing order of reference for bankruptcy cases and related proceedings for the United States District Court for the Southern District of New York. *See* Amended Standing Order of Reference, No. M10-468, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012) (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

---

[1] *See* Motion For Examination Pursuant to Fed. R. Bankr. P. 2004 [ECF No. 40]. In support of the Motion, Jennifer filed the Declaration of Arthur L. Porter, Jr., dated July 30, 2018 [ECF No. 40-1]. She also filed Non-Debtor Spouse Jennifer Brown's Response to Howard Brown's Objection to Examination Pursuant to Fed. R. Bankr. P. 2004 [ECF No. 49] (the "Response").

[2] *See* Objection of Howard Brown to the Motion for Examination Pursuant to Fed. R. Bankr. P. 2004 [ECF No. 44].

Facts

On March 5, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief in this Court, under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"). Approximately five years earlier, Jennifer commenced the Matrimonial Action, which is pending in the State Court. By order dated April 4, 2018, this Court granted Jennifer's motion pursuant to § 362 of the Bankruptcy Code for relief from the automatic stay to permit the Matrimonial Action to proceed to final judgement (the "Stay Relief Order").[3] The size of the marital estate has been "vigorously disputed" by the parties throughout the course of the Matrimonial Action, and in particular, in connection with the State Court's determination of the parties competing claims to the equitable distribution of the marital assets.[4] *See* Motion ¶ 3. In 2006, Howard

---

[3] *See* Order Partially Granting and Partially Denying Motion on Short Notice to Dismiss the Debtor's Petition or, in the Alternative, for Relief from the Automatic Stay to Permit the Non-Debtor Spouse to Proceed with the State Court Matrimonial Action to Enforce Temporary Support Orders, Identify Unaccounted-For Matrimonial Assets, Determine Custody and the Equitable Distribution of the Matrimonial Property, and Dissolve the Marriage [ECF No. 17]. In that motion, Jennifer moved, in the alternative, to dismiss this case pursuant to § 1112(b) of the Bankruptcy Code. The Court denied that relief. *Id.* at 2. In lifting the automatic stay, the Court retained jurisdiction over matters relating to the distribution of estate assets. *Id.* (ruling that "any distribution of property of the bankruptcy estate and any determination of title to assets of the bankruptcy estate, whether for collection of support, equitable distribution or otherwise, shall be subject to this Court's review and approval[.]").

[4] The 2010 version of Section 236 of New York's Domestic Relations Law (which has since been amended, but not in relevant part) provides a framework for determining interests in property in a divorce action, as follows:

> Except where the parties have provided in an agreement for the disposition of their property . . . the court, in an action wherein all or part of the relief granted is divorce, or the dissolution, annulment or declaration of the nullity of a marriage . . . shall determine the respective rights of the parties in their separate or marital property, and shall provide for the disposition thereof in the final judgment.

N.Y. Dom. Rel. Law § 236(B)(5)(a); *see also In re Cole*, 202 B.R. 356, 359-60 (Bankr. S.D.N.Y. 1996) (noting that "in July 1980, New York enacted an equitable distribution law [the Domestic Relations Law]. Equitable distribution creates a classification of property known as 'marital property.'"). For those purposes, "marital property" consists of "all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action, regardless of the form in which title is held[.]" N.Y. Dom. Rel. L. § 236 (B)(1)(c); *see also In re Levenstein*, 371 B.R. 45, 48 (Bankr. S.D.N.Y. 2007) (finding that automatic stay protected debtor's interest in marital property titled in name of non debtor spouse). A debtor spouse does not hold a vested interest in marital property simply because it is marital property. *In re Federes*, 141 B.R. 289, 291 (Bankr. W.D.N.Y. 1992) (citing *In re Hilsen*, 100 B.R. 708, 711 (Bankr. S.D.N.Y. 1989) *rev'd on other grounds*, 119 B.R. 435 (S.D.N.Y. 1990)). Nor do those interests automatically vest upon the commencement of the action. *See In re Hilsen*, 100 B.R. at 711. Rather, they vest upon the entry of the final judgment of divorce. *In re Federes*, 141 B.R. at 291 (citations omitted). If the final judgment is entered after the commencement of the

2

controlled a family-owned business known as Allied Office Products ("AOP"). That year, he sold AOP for $152 million. *Id.* ¶ 3 a. In June 2018, HiTouch, another Brown family business controlled by Howard, underwent a restructuring that Jennifer says resulted in a payment of approximately $21 million to shareholders. *Id.* ¶ 3 b; Response ¶ 3. In the State Court, Jennifer contends that the Debtor has not disclosed all of his assets and has taken steps to hide them from her. Specifically, she says that he has failed to account for 100% of the AOP sale proceeds that Howard distributed to him, and has failed to explain the substantial reduction in his interest in HiTouch prior to the close of the restructuring transaction. Discovery into those matters is the focus of her request for Rule 2004 relief. As to the former, Jennifer asserts that reports filed in the Matrimonial Action by forensic examiners establish that in the period of 2006 to 2016, more than $40 million flowed into the marital estate,[5] and that the Debtor has failed to account for $12.75 million of those funds.[6] She also says that those reports show that there were millions of

---

bankruptcy case, "[the equitable distribution] award transforms the non-debtor spouse into a creditor of the bankruptcy estate within the meaning of 11 U.S.C. § 101(10)." *Musso v. Ostashko*, 468 F.3d 99, 108 (2d Cir. 2006) (citing *In re Palmer*, 78 B.R. 402, 406 (Bankr. E.D.N.Y. 1987); *In re Hilsen*, 100 B.R. at 711).

[5] Jennifer contends that through discovery in the Matrimonial Action, she learned that the Debtor received at least $25,000,000 of the AOP sale proceeds. She says that the source of more than $12,000,000 of those funds was the Howard Brown 2001 GRA Trust. Motion ¶ 3 a.

[6] More specifically, Jennifer asserts, as follows:

> A. The Debtor was the beneficiary of a Grantor Retained Annuity Trust ("GRA Trust") FBO Michael Brown, established by Howard, who received $11,945,626.80 at the closing of the AOP sale.
>
> B. The Debtor, Howard and other family members had controlling ownership interests in AOP and $11,945,626.80 was deposited on May 16, 2006 into a Goldman Sachs account ending #538-2.
>
> C. Pursuant to the terms of the GRA Trust, the Debtor, as the beneficiary, was entitled to be paid $3,512,804.00. However, GRA Trust did not distribute the amounts set forth in the trust agreement but distributed amounts totaling $6,783,066.00 to Howard and not to the Debtor.
>
> D. On information and belief, the Debtor would be entitled to the remaining funds at the expiration of the GRA Trust that would be either $3,512,804.00, the difference between the sale proceeds and the amount payable to Howard, or $6,783,066.00, the difference between the sale proceeds and the amount actually paid to Howard.

3

dollars transferred between Howard and the Debtor; and that millions of dollars were distributed to Howard from a trust settled for the Debtor's benefit. Motion ¶¶ 3 a; 5 c-d. As to HiTouch, Jennifer asserts that between 2013 and 2018 the Debtor's 15.5% interest in HiTouch was diluted first to 7% and then to 0.635%. *Id.* ¶ 10. Jennifer says that the Debtor's interest in the net proceeds of the HiTouch restructuring could be worth as much as $3.2 million (assuming a 15.5% ownership interest), but that he is claiming a right only to the sum of $64,000. *Id*. ¶ 3 c.

Jennifer has taken discovery of Howard in the Matrimonial Action with respect to his financial dealings with the Debtor and other family members. On March 5, 2015, her prior matrimonial counsel deposed Howard on matters relating to the prosecution or defense of the Matrimonial Action, including, but not limited to, financial issues. Objection ¶ 8. In connection with that deposition, Jennifer requested and obtained documents from Howard including tax returns, bank records, and other documents evidencing transfers between the Debtor and Howard. *Id*., Ex. A.[7] That deposition pre-dated the HiTouch $70,000,000 restructuring. By

---

Motion ¶ 5. Jennifer asserts that in his bankruptcy petition, the Debtor did not identify either $3,512,804.00 or $6,783,066.00, as asserts or obligations of the Debtor. *Id*. ¶ 6.

[7] Jennifer obtained the production of documents responding to the following document demands:

> 1. Any and all gift tax returns filed by you in any way related to gifts made by you to Michael Brown, Jennifer Brown, Caroline Brown or Matthew Brown as well as any tax returns or other tax documents related to gifts or transfers to any GRAT in which Michael Brown was/ is a beneficiary and for which you were/ are a trustee, grantor or beneficiary from January 1, 2005 up to and including the present;
>
> 2. Proof of any and all expenses paid you on behalf of Michael Brown, Jennifer Brown, Caroline Brown or Matthew Brown from January 1, 2010 up to and including the present including proof of any and all transfers from any bank accounts held in your name, whether individually or jointly with another, at any financial institution including but not limited to a certain account entitled "HowNan" whether held at JPMorgan Chase or elsewhere;
>
> 3. Proof of any and all monies provided by you to Michael Brown, Jennifer Brown, Caroline Brown or Matthew Brown for any reason from January 1, 2010 up to and including the present;
>
> 4. Proof of any and all gifts over $500.00, whether monetary or otherwise, made by you to Michael Brown, Jennifer Brown, Caroline Brown or Matthew Brown from January 1, 2010 up to and including the present;

4

order dated September 21, 2018, the State Court granted Jennifer's request for leave to take discovery of Howard regarding the HiTouch restructuring, including the dilution of the Debtor's interest in HiTouch. *See* Supplemental Affidavit of Laura Crane Regarding Status of Discovery, Ex. A [ECF No. 55]. That deposition is scheduled to go forward on October 12, 2018.

Jennifer also deposed the Debtor in the Matrimonial Action. She complains that his answers to questions relating to his alleged transfer of millions of dollars to Howard, the withdrawals and loans from certain trusts, and withdrawals from joint accounts in the names of the Debtor and Howard (the "Joint Account") were "vague, ambiguous and unresponsive." Motion ¶ 8. For that reason, Jennifer seeks leave to conduct a Rule 2004 examination of Howard regarding (i) the allegedly missing marital assets; and (ii) the dilution of the Debtor's interest in HiTouch.[8] *Id*. ¶¶ 8-9. Howard opposes the Motion.

---

5. Proof of and documents with respect to any lines of credit or loans for which you were a cosigner or guarantor, jointly with or on behalf of Michael Brown, from January 1, 2010 up to and including the present;

6. Proof of any monies paid by Michael Brown to you or transferred from Michael Brown to you including, but not limited to any transfers or payments made from any accounts held by Michael Brown at Goldman Sachs to accounts held by you, individually or jointly with another, whether held at Goldman Sachs or another financial institutions from January 1, 2006 up to and including the present;

7. Proof of any and all charitable donations made by you on behalf of Michael Brown, Jennifer Brown, Caroline Brown or Matthew Brown from January 1, 2010 up to and including the present; and

8. A copy of your will in the event that Michael Brown is a beneficiary of said will, together with any codicil.

*Id.*

[8] Specifically, Jennifer says that wants to question Howard about the following transfers:

A. The transfer of $3,568,805.00 from the GRA Trust account ending in 538-2 ("GRA Trust Account") to HB and the Debtor's mother Nancy Brown on May 17, 2006, the day after the closing of the sale of AOP.

B. The transfer of $298,153.00 from the GRA Trust Account to Howard and Nancy Brown on May 31, 2006.

5

Discussion

Under Rule 2004, "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). "The purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) (citing *In re Bennett Funding Grp., Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996)). Accordingly, such examination must "relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b). Third parties like Howard are subject to Rule 2004 examination "if they possess knowledge of the debtor's acts, conduct, or financial affairs which relate to the bankruptcy proceedings." *In re Bennett Funding Grp., Inc.*, 203 B.R. at 28 (citations omitted); *see also In re Ecam Publ'ns, Inc.*, 131 B.R 556, 559 (Bankr. S.D.N.Y. 1991) ("Third parties are subject to examination pursuant to Rule 2004 if they have knowledge of the debtor's affairs.") (citation omitted).

---

C. The transfer of $875,000.00 from the GRA Trust Account on June 30, 2006, in the form of a security withdrawal to the Joint Account.

D. The withdrawal of $2,916,108.30 from the GRA Trust Account on March 2, 2007, from North Jersey Community Bank to Hownan Investment Co. per Debtor's request.

E. The deposit of $563,954.36 from Howard Brown 2006 GRAT FBO GMS ALETHEIA into the GRA Trust Account.

F. The deposit of $1,370,000.00 from the Debtor to the GRA Trust Account.

G. Two withdrawals of $1,230,788.94 and $3,172,612.10 from the GRA Trust Account on June 1, 2007.

H. The transfer of $1,000,000.00 from the Debtor's Goldman Sachs account ending in 591-1 to the Joint Account on March 5, 2007.

*Id.*

The decision to grant or deny a request for Rule 2004 discovery rests in the sound discretion of the court. *See In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) ("[a]s the permissive language of the rule suggests, the Court has the discretion to grant a request for a 2004 examination"); *see also In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001) (Rule 2004 gives the court "significant" discretion). In granting such a request, the court must make a finding of good cause for the examination. *ePlus, Inc. v. Katz (In re Metiom, Inc.)*, 318 B.R. 263, 268 (S.D.N.Y. 2004); *see also Matter of Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) ("Although a Rule 2004 examination may be ordered ex parte, once a motion to quash a subpoena is made, the examiner bears the burden of proving that good cause exists for taking the requested discovery."). In assessing the merits of a request to conduct a Rule 2004 examination, the Court must "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination." *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991). The scope of Rule 2004 examinations should not be so broad as to be more disruptive and costly to the debtor than beneficial to the creditor. *See In re Texaco, Inc.*, 79 B.R. 551, 553 (Bankr. S.D.N.Y.1987); *see also In re Fearn*, 96 B.R 135, 138 (Bankr. S.D. Ohio 1989) ("While the scope of Rule 2004 examination is very broad, it is not limitless. The examination should not be so broad as to be more disruptive and costly to the party sought to be examined than beneficial to the party seeking discovery.").

The party seeking relief under Rule 2004 has the burden of demonstrating good cause for conducting the requested discovery. *See SIPC v. BLMIS LLC (In re Madoff)*, Adv. Pro. No. 08-01789, 2014 WL 5486279, at *2 (Bankr. S.D.N.Y. Oct. 30, 2014); *In re AOG Entm't, Inc.*, 558 B.R. 98, 108 (Bankr. S.D.N.Y. 2016). It can satisfy that burden by demonstrating either that it

7

needs the Rule 2004 discovery to establish its claim in the bankruptcy case, or that the denial of the discovery would cause it undue hardship or injustice. *See In re Metiom, Inc*., 318 B.R. at 268 (noting, "[g]enerally, good cause is shown if the examination is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice.") (quoting *In re Dinubilo*, 177 B.R. 932, 943 (E.D. Cal. 1993)) (quotation marks omitted); *accord In re SunEdison, Inc*., 562 B.R. 243, 249 (Bankr. S.D.N.Y. 2017); *In re AOG Entm't, Inc.,* 558 B.R. at 109.

Jennifer has not met her burden of showing good cause for relief under Rule 2004. First, she has not demonstrated that she requires Rule 2004 discovery to fix her claim in this case. As of the Petition Date, Jennifer was asserting claims against the Debtor on account of: (i) his alleged failure to make court ordered maintenance and support payments to her; and (ii) his alleged failure to account for $12,750,000, which, as noted previously, Jennifer says is part of the marital estate created under New York State law. Jennifer's alleged equitable right to a share of those allegedly missing assets is the basis of the $6,375,000 Proof of Claim that she filed herein. *See* Claim No. 6-1.[9] Although this Court has retained jurisdiction over matters relating to the distribution of estate property in satisfaction of the claim, *see supra* n. 3, the State Court, not this Court, will liquidate that claim in the Matrimonial Action. Jennifer has taken discovery in that action on matters relating to the equitable distribution of the marital assets. If she requires additional discovery, it is appropriate that she seeks it in the State Court—as she recently did

---

[9] In June 2018, the Debtor filed a complaint in this Court objecting to the Debtor's discharge in bankruptcy, and to the dischargeability of the maintenance and support claim under §§ 727(a) and 523(a) of the Bankruptcy Code, respectively. *See* Complaint for Determination of Dischargeability and Objecting to Debtor's Discharge Pursuant to Sections 523 and 727 of the Bankruptcy Code. *See* Adv. Pro. No. 18-01553 [AP ECF No. 1]. By order dated September 25, 2018, this Court granted the Debtor's motion to dismiss the Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, for lack of subject matter jurisdiction. *See* Memorandum Decision and Order Granting Defendant's Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) [AP ECF No. 12].

with regard to the issues surrounding the HiTouch restructuring. Likewise, Jennifer has not demonstrated that she will suffer undue hardship if the Court denies her motion. Again, in the Matrimonial Action, Jennifer has deposed Howard and the Debtor on matters relating to the marital assets. She will have the opportunity to depose Howard on matters relating to HiTouch and, in particular, the dilution of the Debtor's interest in HiTouch. Jennifer has had, or will have, the opportunity to conduct discovery in the State Court on the matters that she has put at issue in the Rule 2004 motion. She will not suffer hardship or injustice if she is denied an additional opportunity to do the same discovery in this case. The Court also denies Jennifer's request for Rule 2004 because it runs afoul of the "pending proceeding" rule. Under that rule, "once an adversary proceeding or contested matter is commenced, discovery should be pursued under the Federal Rules of Civil Procedure and not Rule 2004." *In re Enron Corp.*, 281 B.R. at 841; *see also In re Bennett Funding Grp., Inc.*, 203 B.R. at 28 (noting that "once an adversary proceeding or contested matter has been commenced, discovery is made pursuant to the Fed. R. Bankr. P. 7026 *et. seq.*, rather than by a Fed. R. Bankr. P. 2004 examination."). The rule applies to pending state court litigation, like the Marital Action. *See In re Glitnir banki hf.*, No. 08-14757, 2011 WL 3652764, at *4 (Bankr. S.D.N.Y. Aug. 19, 2011) (citations omitted). The rationale underlying the rule is the "concern that a party to litigation could circumvent his adversary's rights by using Rule 2004 rather than civil discovery to obtain documents or information relevant to the lawsuit." *In re SunEdison, Inc.*, 572 B.R. 482, 490 (Bankr. S.D.N.Y. 2017) (citing cases). That is because discovery under Rule 2004 is broad in scope, often likened to a "fishing expedition," in contrast to the more stringent nature and available protections of discovery under the Federal Rules of Civil Procedure or applicable state court rules. *See, e.g.*, *In re Ecam Publ'ns, Inc.*,131 B.R. at 559 (noting that "[d]iscovery under Rule 2004 is broader than that

9

available under the Federal Rules of Civil Procedure") (citation omitted); *In re Enron Corp.*, 281 B.R. at 840-41.  Jennifer is pursuing Howard and his assets in the Matrimonial Action.  The Court will not authorize Jennifer to conduct Rule 2004 discovery of Howard, as that would allow her a "back door" through which she could circumvent the oversight and procedural protections he is otherwise afforded in the Matrimonial Action.  *See In re Bennett Funding Grp., Inc.*, 203 B.R. at 30 (refusing to allow examination of non-debtor third party because it would necessarily involve issues and parties within the scope of adversary proceeding); *see also In re Enron Corp.*, 281 B.R. at 842 (denying class action plaintiff's Rule 2004 request for information obtained by the Official Committee of Unsecured Creditors from potential third party witness to class action because class action plaintiff was seeking Rule 2004 information for purposes of discovery in class action and not in connection with bankruptcy case); *In re SunEdison, Inc.*, 572 B.R. at 490-92 (denying debtors' request to take Rule 2004 examination of party in pending state court litigation with non-debtor subsidiaries even though debtor was not a party to action because, in part, the debtors "appear[ed] to be using Rule 2004 to help [its non-debtor subsidiaries] get through Rule 2004 what [they] should instead seek in the State Court Action.").  For that additional reason, the Court denies the Motion.

## Conclusion

Based on the foregoing, the Motion is DENIED.


IT IS SO ORDERED.

Dated: New York, New York
      October 11, 2018                        /s/ *James L. Garrity, Jr.*
                                                  Hon. James L. Garrity, Jr.
                                                  United States Bankruptcy Judge