UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                             :
In re:                                                       :          Chapter 7
                                                             :
Michael Rodger Brown,                                        :          Case No. 18-10617 (JLG)
                                                             :
Debtor.                                                      :
                                                             :
-------------------------------------------------------------x

**MEMORANDUM DECISION ON DEBTOR'S MOTION TO APPROVE TITLE TO AND DISTRIBUTION OF MARITAL PROPERTY PURSUANT TO TERM SHEET IN MATRIMONIAL ACTION, AND EXPUNGE CLAIM NO. 6 OF JENNIFER BROWN PURSUANT TO 11 U.S.C. § 502(a) AND FED. R. BANKR. P. 3007**

**APPEARANCES**:

LAW OFFICES OF KENNETH L. BAUM LLC
167 Main Street
Hackensack, New Jersey 07601
By:    Kenneth L. Baum

*Counsel to Michael Rodger Brown, Chapter 7 Debtor*

FISCHER PORTER & THOMAS, P.C.
560 Sylvan Avenue, Suite 3061
Englewood Cliffs, NJ 07632
By:    Arthur L. Porter, Jr.
       Aaron E. Albert

*Counsel to Jennifer Brown*

AKERMAN LLP
666 Fifth Avenue
20th Floor
New York, NY 10022
By:    John P. Campo

*Counsel to John S. Pereira, as Chapter 7 Trustee for the Estate of Michael Rodger Brown*

<u>Introduction</u>

Michael Roger Brown (the "Debtor") filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") in this Court on March 5, 2018 (the "Petition Date").   That day, John S. Periera, Esq. was appointed chapter 7 trustee for the Debtor's estate (the "Chapter 7 Trustee") and qualified for and accepted that appointment.  As of the Petition Date, the Debtor was a defendant in a divorce action (the "Matrimonial Action") commenced by his then-wife, Jennifer Brown ("Jennifer") in the Supreme Court of the State of New York, County of New York, Matrimonial Term (the "State Court").

The Matrimonial Action was automatically stayed upon the commencement of this case. Among the open issues in that action at that time was the extent of Jennifer's share of the marital assets.  Jennifer timely filed a contingent claim in this case in the sum of $6,375,000.  It represents her claim to equitable distribution of the marital assets, including to her share of the so-called Unaccounted For Marital Assets, that Jennifer says the Debtor failed to account for in the Matrimonial Action (the "Equitable Distribution Claim").[1]  Shortly after the Petition Date, the Court granted Jennifer relief from the automatic stay and leave to continue the Matrimonial Action in all respects, including the issuance of a judgment determining the nature and extent of marital property, the nature and extent of Jennifer's interest in such property, and the equitable distribution of such property.  In doing so, the Court denied the Debtor's request that this Court determine the extent of the Debtor's and Jennifer's interests in marital property.  Without limitation, the lift stay order directed that if the Debtor and Jennifer entered into a settlement agreement in the Matrimonial Action, any provisions of such an agreement that purported to

---

[1]     On the claims docket, the Equitable Distribution Claim is designated as "Claim No. 6."

determine the distribution of or title to property of the bankruptcy estate would not be effective as to such property without this Court's approval.

The Matrimonial Action went forward in the State Court.  After five days of a scheduled twenty-two day trial, Jennifer and the Debtor reached a global settlement that they embodied in a "So Ordered Term Sheet" (the "Term Sheet").  Among other things, the Term Sheet resolves all financial matters at issue in the Matrimonial Action.  To that end, the Term Sheet fixes Jennifer's share of equitable distribution at $2,500,000 and provides that she will be paid that sum as her share of equitable distribution, not out of marital or estate property, but out of the Debtor's post-petition earnings.  Moreover, it provides that Jennifer will turn over all her marital property to the Chapter 7 Trustee.

The State Court approved the Term Sheet and incorporated it (but did not merge it) in the Judgment of Divorce (the "Divorce Judgment") that it entered on November 8, 2018.  The Debtor filed an objection to the Equitable Distribution Claim.  *See* Notice of Objection to Claim [ECF 86] (the "Claim Objection").  The matter before the Court is the *Debtor's Motion to Approve Title to and Distribution of Marital Property Pursuant to Term Sheet in Matrimonial Action and Expunge Claim No. 6 of Jennifer Brown Pursuant to 11 U.S.C. § 502(a) and Fed. R. Bankr. P. 3007* (the "Motion") [ECF 85].[2]  In the Motion, the Debtor is seeking the entry of an order (i) pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving the distribution of his and Jennifer's  marital property pursuant to the Term

---

[2]    In support of the Motion, the Debtor filed: the Declaration of Michael Brown annexed as Exhibit 1 to the Motion, dated November 26, 2019 [ECF 85-1] (the "Brown Decl."); the Declaration of Lauren Crane, Esq. annexed as Exhibit 2 to the Motion, dated November 19, 2019 [ECF 85-1] (the "Crane Decl."); and the *Reply Declaration of Lauren Crane, Esq., In Response to Objection of Jennifer Brown to, and in Further Support of, Debtor's Motion to Approve Title to and Distribution of Marital Property Pursuant to Term Sheet in Matrimonial Action, and Expunge Claim No. 6 of Jennifer Brown Pursuant to 11 U.S.C. § 502(a) and Fed. R. Bankr. P. 3007* [ECF 90] (the "Reply").

Sheet; and (ii) expunging the Equitable Distribution Claim.   The Chapter 7 Trustee joins in and supports the Motion.[3] Jennifer objects to the Motion.[4]

For the reasons set forth herein, the Court denies the Debtor's request for relief under Bankruptcy Rule 9019 as moot, and grants the Debtor's request to expunge the Equitable Distribution Claim.

## Jurisdiction

The Court has jurisdiction over the Motion pursuant to §§ 1334(a) and 157(a) of title 28 of the United States Code, and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding.  28 U.S.C. §§ 157(b)(2)(A) & (B).

## Facts

The Matrimonial Action

Jennifer and the Debtor were married on March 24, 2001.  During their marriage the couple experienced marital problems and prior to March of 2013, Jennifer and the Debtor were separated for approximately one year.  On March 26, 2013, Jennifer, as plaintiff, commenced the Matrimonial Action in the State Court against the Debtor, as defendant.  By order dated June 6, 2013, the State Court appointed the firm of Bollam Sheedy Torani & Co., LLP CPA ("BST") to

---

[3]     *See Joinder to, and Memorandum in Support of, Debtor's Motion to Approve Title to and Distribution of Marital Property Pursuant to Term Sheet In Matrimonial Action, and Expunge Claim No. 6 of Jennifer Brown Pursuant to 11 U.S.C. § 502(a) and Fed. R. Bankr. P. 3007 In Response to Opposition thereto* [ECF 92] (the "Chapter 7 Trustee's Joinder").   In support of the Trustee's Joinder, the Chapter 7 Trustee filed the *Trustee's Reply to Jennifer Brown's Response to Joinder To, and Memorandum in Support of, Debtor's Motion to Approve Title To and Distribution of Marital Property Pursuant to Term Sheet in Matrimonial Action and Expunge Claim No. 6 of Jennifer Brown Pursuant to 11 U.S.C. § 502(a) and Fed. R. Bankr. P. 3007* [ECF 99] (the "Trustee's Reply").

[4]     *See Declaration of Arthur L. Porter, Jr.* [ECF No. 88] (the "Porter Decl."); *Memorandum of Law in Opposition to Debtor's Motion to Approve the Matrimonial Settlement and Expunge Jennifer Brown's Claim No. 6* [ECF No. 89] ("Jennifer MOL").   With leave of the Court, Jennifer filed a sur-reply to the Debtor's and Chapter 7 Trustee's submissions.  *See Jennifer's Supplemental Letter Reply in Opposition* [ECF 97] (the "Sur-Reply").

serve as an independent expert in the case.  BST's mandate was to "appraise the defendant-husband's interest in various entities, including but not limited to Brown Management Company LLC and HiTouch Business Services LLC," and to "trace the source, use and application of marital funds acquired and spent since May 2006."  *See* BST Report at 1.[5]  The BST Report identified more than $40 million in deposits into marital accounts in addition to an existing balance of $22.8 million.  BST could not account for a total of $12.75 million of funds deposited into the accounts (the "Unaccounted For Marital Assets").  *See id.* at 16, 26-27.  After BST produced its report, Jennifer retained Financial Research Associates ("FRA"), to serve as her own expert and to review the findings set forth in the BST Report.  FRA produced a report (the "FRA Report") in which it noted, among other things:

> BST was unable to identify the disposition of certain funds, which included $8.55 million, that were not included in the ending account balances of the marital accounts analyzed by BST.  All told, $12.75 million in transfers could not be traced to a bank account statement to confirm their ultimate disposition.

*See* FRA Report at 1.[6]

The Debtor Commences Chapter 7 Case and Jennifer Immediately Seeks To Dismiss It

The Matrimonial Action was extremely contentious.  As of the Petition Date, Jennifer was proceeding in the State Court to punish the Debtor for contempt based upon his refusal to pay BST's fees and his failure to pay State Court-ordered support for her and the couple's minor children.  *See* Affirmation of Arthur L. Porter, dated February 26, 2018 ¶¶ 4-5.[7]  The Debtor commenced his voluntary chapter 7 case on March 5, 2018.  On March 12, 2018, Jennifer filed a

---

[5]    A copy of that report is annexed as Exhibit 3 to the Declaration of Arthur L. Porter, dated March 12, 2018 [ECF 6-5] (the " March 12 Porter Decl.").

[6]    A copy of that report is annexed as Exhibit 4 to the March 12 Porter Decl.  [ECF 6-6]

[7]    A copy of this affirmation is annexed as Exhibit 15 to the March 12 Porter Decl. [ECF 6-17]

motion herein seeking, alternatively, to dismiss the case or to obtain stay relief to permit her to

proceed with the Matrimonial Action (the "Motion to Dismiss").[8]  In substance, Jennifer sought

to dismiss the Debtor's bankruptcy case on the grounds that:

(i)   The Debtor owed her $166,000 in alimony and domestic support obligations, which is a
non-dischargeable debt under the Bankruptcy Code and not properly subject to challenge
in this Court; and

(ii)  The Debtor's chapter 7 petition misrepresented the Debtor's income, assets and liabilities
including the extent of his ownership interest in his family's business; and failed to
provide a full accounting to trace the Unaccounted For Marital Assets.

Motion to Dismiss at 7-10.  In the alternative, she sought relief from the automatic stay to allow

her to continue the Matrimonial Action, including the collection of current and overdue support

obligations, identification of the Unaccounted For Marital Assets and a determination by the

State Court of the equitable distribution of marital assets.  *Id.* at 11.  Jennifer submitted an

affidavit in support of the motion (the "February 23 Affidavit").[9]  In that affidavit, she asserted

that during the couple's a one-year separation prior to the commencement of the Matrimonial

Action, the Debtor made two trips to the Cayman Islands.  February 23 Affidavit ¶ 6.  She

suggests that the Unaccounted For Marital Assets might be on deposit in a Cayman bank

account.  *Id.* ¶ 7.

The Court Grants Jennifer Stay Relief To Prosecute the Matrimonial Action

---

[8]    *See Motion of Short Notice to Dismiss the Debtor's Petition or, in the Alternative, for relief from the Automatic Stay to Permit the Non-Debtor Spouse to Proceed with the State Court Matrimonial Action to Enforce Temporary Support Orders, Identify Unaccounted-for Matrimonial Assets, Determine Custody and the Equitable Distribution of Matrimonial Property, and Dissolve the Marriage.*  [ECF 6]

[9]    A copy of Jennifer Brown's February 23, 2018 Affidavit is annexed as Exhibit 2 to the March 12 Porter Decl. [ECF 6-4]

The Debtor and Chapter 7 Trustee each opposed the Motion to Dismiss and both urged the Court to grant stay relief to permit the Matrimonial Action to proceed to a final judgment in the State Court.[10]  However even as he urged the Court to grant stay relief, the Debtor asked the Court to reserve for its own determination the issue of the equitable distribution of the marital assets.  In substance, the Debtor argued that allowing the issue of equitable distribution to proceed in the State Court would very likely interfere with the expeditious administration of the Debtor's estate because Jennifer's attorney was attempting to re-open discovery in the Matrimonial Action, which could substantially delay the resolution of the equitable distribution issue.  *See* Debtor's Opposition to MTD ¶ 20.  The Debtor insisted that adjudication of the issue of equitable distribution in this Court would allow for an expeditious resolution of the issue, without the need to await a trial in the State Court.  *Id.* ¶ 21.  The Debtor argued that all creditors and parties-in-interest would unquestionably benefit from a prompt determination of the issue, as it would allow the Trustee to fully administer the Debtor's estate without delay.  *Id.*

After hearing argument on the Motion to Dismiss, on April 4, 2018, the Court entered an order denying Jennifer's request to dismiss the case but granting stay relief to permit the Matrimonial Action to proceed in all respects (the "April 4 Order").[11]  The Court denied the

---

[10]    *See Letter to Judge Garrity from Chapter 7 Trustee In Response to Motion To Dismiss Case, Or In The Alternative, Relief From Stay* [ECF 11]; *Declaration of Susan L. Bender, Esq, In Opposition To Motion To Dismiss Case, Or In The Alternative, Relief From Stay* [ECF 12]; *Debtor's Objection To Jennifer Brown's Motion On Short Notice To Dismiss The Debtor's Petition Or, In the Alternative, For Relief From The Automatic Stay To Permit The Non-Debtor Spouse To Proceed With The State Court Matrimonial Action To Enforce Temporary Support Orders, Identify Unaccounted-For Matrimonial Assets, Determine Custody and The Equitable Distribution of Matrimonial Property, and Dissolve the Marriage* [ECF 13] (the "Debtor's Opposition to MTD")

[11]    *See Order Partially Granting and Partially Denying Motion On Short Notice To Dismiss the Debtor's Petition Or, In The Alternative, For Relief From the Automatic Stay To Permit The Non-Debtor Spouse To Proceed With The State Court Matrimonial Action To Enforce Temporary Support Orders, Identify Unaccounted-For Matrimonial Assets, Determine Custody and The Equitable Distribution Of Matrimonial Property, and Dissolve The Marriage.* [ECF 17]

Debtor's request that it reserve the issue of equitable distribution for its own determination.

Instead, it directed that litigation in the Matrimonial Action could proceed in all respects

including, without limitation, a determination of (i) the nature and extent of marital property, (ii)

the nature and extent of Jennifer's interest in such property, and (iii) the equitable distribution of

such property.  However, the Court directed that any determination regarding the distribution of

property of the bankruptcy estate and any determination of title to assets of the bankruptcy estate,

whether for collection of support, equitable distribution or otherwise, would be subject to the

Court's review and approval.  In part, the April 4 Order states that it is:

> ORDERED that the Motion is granted to the extent that Jennifer is granted relief
> from the Automatic Stay and leave to continue the Matrimonial Action in all
> respects, including without limitation the determination of temporary and
> permanent support, maintenance, and alimony; the enforcement of state court
> orders for support; and the rendering of judgment determining the nature and
> extent of marital property, the nature and extent of Jennifer's interest in such
> property, and the equitable distribution of such property, provided that while
> Jennifer is free to seek to collect or obtain any property that is not part of the
> Debtor's bankruptcy estate, including without limitation post-petition income and
> assets, any distribution of property of the bankruptcy estate and any determination
> of title to assets of the bankruptcy estate, whether for collection of support,
> equitable distribution or otherwise, shall be subject to this Court's review and
> approval; and it is further
>
> ORDERED that in the event that Jennifer and the Debtor enter into a settlement
> agreement, any provisions of such an agreement that purports to determine the
> distribution of or title to property of the bankruptcy estate shall not be effective
> with regard to such property without this Court's review and approval.

April 4 Order at 2-3.

<u>Jennifer Timely Files Claims In The Bankruptcy Case and Debtor Receives Discharge In
Bankruptcy</u>

The claims bar date in the chapter 7 case was August 6, 2018.  Eight claims totaling the

sum of $12,594,446.96 were timely filed.  *See* Claims Register Summary.  On July 27, 2018,

Jennifer filed the Equitable Distribution Claim.  *See* Claim No. 6.  She filed it as a contingent

claim based on the alleged missing marital property identified and/or discussed in the BST

Report and FRA Report.  On October 8, 2018, the Court entered an order granting the Debtor his

discharge in bankruptcy under § 727 of the Bankruptcy Code.  *See* Order of Discharge [ECF 56].

The Matrimonial Action Goes Forward In The State Court

On February 7, 2019, the State Court issued an order directing, in part, that "a hearing

and trial shall be conducted by a Special Referee in order to hear and report on all of the open

financial issues in this matrimonial action."  *See* Reference Order at 1.[12]  The open financial

issues included equitable distribution, spousal maintenance, child support and counsel fees.

Crane Decl. ¶ 4.  Thereafter, on or about June 26, 2019, the parties stipulated and agreed that the

Special Referee would oversee the hearing and trial called for under the Reference Order.[13]  The

Special Referee conducted pre-trial conferences on April 15, 2019 and June 26, 2019, and

scheduled twenty-two days of trial commencing on July 18, 2019.  Crane Decl. ¶ 5.  Between

June 26, 2019 and June 30, 2019, the parties engaged in settlement negotiations with the Special

Referee.  *Id.* ¶ 8.  Of the many issues negotiated between the Debtor and Jennifer, the most

heavily negotiated were Jennifer's share of equitable distribution, and the time period in which

the Debtor shall pay Jennifer her share of equitable distribution.  *Id.* ¶ 9.  The parties were unable

to reach a settlement, and on July 18, 2019 the Special Referee commenced the trial.  *Id.* ¶ 5.

Jennifer and the Debtor Reach a Settlement of the Matrimonial Action and Execute a Term Sheet
Embodying the Terms of the Settlement

Upon conclusion of the trial testimony on July 29, 2019, the Debtor and Jennifer, through

their respective counsel, reached a settlement of the Matrimonial Action, including all open

---

[12]    A copy of the Reference Order is annexed as Exhibit B to the Crane Decl.

[13]    A copy of the stipulation is annexed as Exhibit C to the Crane Decl.

financial issues between the parties.  Specifically, the Debtor and Jennifer agreed to resolve

Jennifer's right to equitable distribution of the marital assets in accordance with the following

terms:

> For her share of equitable distribution, the Debtor shall pay Jennifer Brown a total
> amount of $2,500,000 over the course of four (4) years. The Debtor shall pay
> $500,000 within thirty (30) days after entering into an agreement, and then
> $250,000 in eight (8) equal installments. To ensure payment of the equitable
> distribution payments, the Debtor's father, Howard Brown, shall be a guarantor. In
> exchange, the Debtor and his bankruptcy estate shall retain ownership of all
> personal property and assets acquired by either party from the date of marriage,
> March 24, 2001, through the date of the commencement of the action for divorce,
> March 26, 2013. Lastly, Jennifer Brown shall not interfere with the Debtor's
> bankruptcy action.

Crane Decl. ¶¶ 10(a), 11.  On the evening of July 29, 2019, Debtor's counsel forwarded

Jennifer's counsel the proposed "So-Ordered Term Sheet" that included those terms.  *Id*. ¶ 11.

On July 30, 2019 (the "July 30 Hearing"), after five days of trial, the Special Referee reported

that earlier that morning, she had been presented with the Term Sheet, executed by the parties.

*See* H'rg Tr. 2:22-24.[14]  In substance, in regard to equitable distribution, the Term Sheet (i) states

that the Debtor will pay to Jennifer the sum of $2,500,000 out of his post-petition income as her

share of equitable distribution (hereinafter the Court will refer to that payment as the "Equitable

Distribution Payment"), and (ii) specifies the payment terms, including that the Debtor's father,

Howard Brown, will execute a separate guarantee to secure the Equitable Distribution Payment.

It also addresses Jennifer's obligations in respect of her receipt of the Equitable Distribution

Payment.  In substance, it provides that Jennifer (a) will make a list of particular types of assets

acquired by the Debtor or Jennifer during the marriage that remain in her possession and, for

---

[14]    A copy of the Transcript of July 30, 2019 State Court hearing is annexed as Exhibit E to the Crane Decl.  A
copy of the Term Sheet is annexed as Exhibit D to Crane Decl.

certain of those assets, that Jennifer donated, gifted or provided to a third party, (b) provide the

list to the Debtor, his counsel and counsel to the Chapter 7 Trustee, and (c) deliver the items

contained on her list to the  Chapter 7 Trustee or his counsel.[15]  In other words, in that agreement

---

[15]    As relevant, the Term Sheet states, as follows:

2. The Defendant . . . shall pay to the Plaintiff . . . $2,500,000 as her share of equitable distribution. The Defendant shall pay $15,924.33 to The Law Firm of Laurence Greenberg by August 16, 2019 to satisfy the January 6, 2015 Charging Lien. The Defendant shall [pay] (*sic*) to the Plaintiff's current attorney, Arthur "Scott" L. Porter, Jr.'s, escrow account in the amount $184,075.67 by August 16, 2019. The Defendant shall pay the Plaintiff's current attorney, Arthur "Scott'' L. Porter, Jr. 's, escrow account an additional $300,000 by August 31, 2019.  The Defendant shall pay the remaining $2,000,000 in eight (8) equal installments in the amount of $250,000 to the Plaintiff. The Defendant shall pay $250,000 on the following dates: (a) February 28, 2020; (b) August 31, 2020; (c) February 28, 2021; (d) August 31, 2021; (e) February 28, 2022; (f) August 31, 2022; (g) February 28, 2023; and (h) August 31, 2023.

3. The Defendant's father, Howard Brown, shall execute a separate guarantee to secure the distributive award as set forth in paragraph 2 within five (5) business days from execution of this term sheet. This is a material term of this term sheet.

4. The Plaintiff shall prepare a list of the following: (a) jewelry acquired by either the Plaintiff and/or Defendant during the marriage that she sold from March 26, 2013 to the present; (b) furniture and/or furnishings acquired by either the Plaintiff and/or Defendant during the marriage that she sold from March 26, 2013 to the present; (c) artwork acquired by either the Plaintiff and/or Defendant during the marriage that she sold from March 26, 2013 to the present; (d) handbags, clothing, shoes, or any other possession acquired by either the Plaintiff and/or Defendant during the marriage that she sold from March 26, 2013 to the present; (e) jewelry acquired by either the Plaintiff and/or Defendant during the marriage that remains in her possession; (f) furniture and/or furnishings acquired by either the Plaintiff and/or Defendant during the marriage that remains in her possession; (g) artwork acquired by either the Plaintiff and/or Defendant during the marriage that remains in her possession; (h) handbags, clothing, shoes, or any other possession acquired by either the Plaintiff and/or Defendant during the marriage that remains in her possession; (i) jewelry acquired by either the Plaintiff and/or Defendant during the marriage that Plaintiff donated, gifted, or provided to a third party; (j) furniture and/or furnishings acquired by either the Plaintiff and/or Defendant during the marriage that Plaintiff donated, gifted, or provided to a third party; (k) artwork acquired by either the Plaintiff and/or Defendant during the marriage that Plaintiff donated, gifted, or provided to a third party; and (l) handbags, clothing, shoes, or any other possession acquired by either the Plaintiff and/or Defendant during the marriage that Plaintiff donated, gifted, or provided to a third party. Within ten (10) days after execution of this Term Sheet, the Plaintiff shall provide the list of items set forth in this paragraph to the following: (a) Defendant, Michael Brown, located at 778 Park Avenue, 5th Floor, New York, New York 10021; (b) Defendant's counsel, Bender & Rosenthal LLP, located at 451 Park Avenue South, 8th Floor, New York, New York 10016; (c) Bankruptcy Trustee's attorney, John P. Campo, Esq., located at 666 Fifth Avenue, New York, New York, 10103; and (d) Bankruptcy Trustee, John S. Pereira, Esq., located at 641 Lexington Avenue, New York, New York 10022.

5. Within thirty (30) days after execution of this Term Sheet, the Plaintiff shall provide all of the items that are listed in paragraph (4)(e), (4)(f), (4)(g), (4)(h), (4)(i), (4)(j), ( 4)(j), ( 4)(k), and ( 4)(1) set forth herein to either the Bankruptcy Trustee's attorney, John P. Campo, Esq., located at 666 Fifth Avenue, New York, New York, 10103 or the Bankruptcy Trustee, John S. Pereira, Esq.,

Jennifer surrendered any right to retain marital property in consideration for the Equitable

Distribution Payment.[16]

After announcing that Jennifer and the Debtor had executed the Term Sheet, the Special

Referee marked the Term Sheet as an exhibit to the record of the  hearing and advised that she

would "ask [Jennifer] the necessary questions for [the Special Referee] to determine whether or

not [Jennifer] wishes [the Term Sheet] to be the agreement that resolves the financial issues in

her divorce action."  July 30 H'rg Tr. 2:12-22.

<u>The Special Referee Takes Allocutions from the Debtor and Jennifer</u>

At the July 30 Hearing, the Special Referee took allocutions from both Jennifer and the

Debtor as to the Term Sheet.  Jennifer and the Debtor were represented by their respective

counsel.  In her allocution, without limitation, Jennifer stated in substance, that:

- She executed the Term Sheet.

---

located at 641 Lexington Avenue, New York, New York 10022. The Plaintiff shall provide
Defendant and his matrimonial counsel notice that she delivered all of the above items to the
Bankruptcy Trustee or his counsel.

Term Sheet ¶¶ 2-5

[16]    In negotiating the Term Sheet, Jennifer rejected an option to be paid her share of equitable distribution that
would have permitted her to retain marital property, as follows:

For her share of equitable distribution, the Debtor shall pay Jennifer Brown a total amount of
$2,250,000 over the course of three and a half (3.5) years.  The Debtor shall pay $500,000 within
thirty (30) days after entering into an agreement, and then $250,000 in seven (7) equal installments.
In addition, Jennifer Brown shall retain ownership of all personal property acquired by either party
from the date of marriage, March 24, 2001, through the date of the commencement of the action for
divorce, March 26, 2013.  In exchange, the Debtor and his bankruptcy estate retain ownership of all
other assets acquired during the marriage.  To ensure payment of Jennifer Brown's share of equitable
distribution, the Debtor's father, Howard Brown, shall be a guarantor.  Lastly, Jennifer Brown shall
not interfere with the Debtor's bankruptcy action.

Crane Decl. ¶10(b).

- Prior to executing the Term Sheet she (i) read the entire Term Sheet, (ii) initialed each page of the Term Sheet as she read it, and (iii) reviewed the Term Sheet with her attorney before executing it.

- She believed that she had sufficient information about the Debtor's finances to be able to enter into the Term Sheet.

- She was aware that the Term Sheet had been discussed and negotiated over a substantial period of time and was satisfied with the work done by her counsel in connection with the Term Sheet.

- She understood each part of the Term Sheet and believed the Term Sheet to embody a fair and reasonable settlement of the economic issues in the Matrimonial Action.

- She was not under the influence of any duress or coercion to enter into the Term Sheet.

- She understood that once the Special Referee accepted the Term Sheet as the basis for her judgment of divorce, it was extremely difficult to change or modify it in any way, except as laid out in the agreement.

July 30 H'rg Tr. 4:6-25; 5:1-9; 7:21-23; 8:10-23.  At the conclusion of the allocutions the Special

Referee accepted the Term Sheet as the basis for the parties' judgment of divorce.  *Id.* at 14:8-

14.[17]

The State Court Enters Judgment of Divorce

---

[17]    The Special Referee stated, as follows:

> Okay.  Then based on the parties' allocution, I accept this agreement as the basis for your judgment of divorce, understanding, of course, that it is anticipated there will be a more comprehensive agreement within the next 30 days.  So that would be by August 30th.  But in the event there is not, that this can be the basis for your judgment of divorce.

July 30 H'rg Tr. 14:8-14.

On September 25, 2019, the Debtor submitted a Proposed Judgment of Divorce in the

Matrimonial Action.  *See* Crane Decl. ¶ 12.  In part, it provided that "in accordance with . . . the

Term Sheet, [the Debtor] shall pay to [Jennifer] a total amount of $2,500,000 as her share of

equitable distribution[.]"  *See* Judgment of Divorce at 6.[18]  Jennifer objected to the entry of the

Debtor's Proposed Judgment of Divorce and submitted a Proposed Counter Judgment of Divorce

and supporting affidavit (the "Affidavit in Support of Counter Judgment of Divorce"), dated

October 3, 2019, to the State Court.  In that affidavit, and without limitation, Jennifer asserts

that:

- In the negotiations leading up to the execution of the Term Sheet, the parties never discussed or agreed that she would withdraw the Equitable Distribution Claim.

- She agreed to accept $2,500,000.00 in payments from the Debtor, as guaranteed by his father Howard Brown, as "possibly a credit against the [Equitable Distribution Claim] claim, but certainly . . . not . . . in satisfaction of [the Equitable Distribution Claim]."

- At no time, did she agree to provide to the Debtor a release of the bankruptcy claim or her rights to equitable distribution of funds that are subject to and/or owned by the Debtor's bankruptcy estate of Michael Rodger Brown.  As support, she asserts that:

    The So-Ordered Term Sheet does not contain a release and/or discharge of her equitable distribution rights against the Debtor.

    The sworn testimony she gave to the Special Referee in approving the settlement does not contain a release of her equitable distribution rights.

- Although the So-Ordered Term Sheet requires her to turn over to the Trustee a list of marital items in her possession and that she turn those items over to the Trustee, nowhere on the Term Sheet does it say that she also agreed to withdraw her proof of claim, or that she has resolved her claims against the bankruptcy estate.

---

[18]    A copy of the Judgment of Divorce is annexed as Exhibit A to the Crane Decl.  The Debtor did not attach a copy of his Proposed Judgment of Divorce; however, the Debtor represents, and Jennifer does not dispute, that the Judgment of Divorce is identical to the Debtor's Proposed Judgment of Divorce.

Affidavit in Support of Counter Judgment of Divorce ¶¶ 2(a)-(c). [19]  Jennifer asserts that

"[s]imply put, on July 30, 2019, I resolved financial issues against Mr. Brown in the matrimonial

matter, except I did not and never intended to resolve my claims against the bankruptcy estate

nor my rights to assert and enforce my equitable distribution rights in bankruptcy court or

subsequently in this court."  *Id.* ¶ 2(c).  As support she asserts that

> Paragraph 21 of the Term Sheet recognizes that her claim in the
> bankruptcy court would proceed in spite of receiving
> $2,500,000.00, because in that paragraph she agreed to "not
> interfere and/or block the Defendant's bankruptcy actions."
>
> She reasons that if she had agreed to withdraw her claim against
> the bankruptcy estate, the Term Sheet would have called for her to
> agree "not interfere and/or block" dismissal of the bankruptcy
> matter and that she affirmatively waived her rights and withdrew
> her claim and gave up her claim for equitable distribution.

*See id.* ¶¶ 2(a)-(d).  On or about October 24, 2019, Jennifer submitted an affidavit to the State

Court in connection with the resolution of a dispute among the Debtor and Jennifer.  In part, in

the affidavit, Jennifer addressed the scope of the Term Sheet, and, in particular, the effect of the

Term Sheet on her Equitable Distribution Claim, as follows:

> The Defendant's demand that I withdraw my proof of claim in the bankruptcy
> matter is really a thinly veiled attempt to change the Term Sheet.  At no time did I
> ever agree to withdraw the proof of claim and I cannot be forced to do so.  The
> Defendant fails to recognize that when the Trustee establishes that the Defendant
> has hidden $12,000,000.00, the Term Sheet will be vacated on the basis of
> Defendant's fraud.  At such time, my rights to equitable distribution, as
> recognized by Judge Garrity, will be recognized and subject to enforcement.
> Clearly, the Defendant mistakenly believed that he had escaped the microscope
> that the U.S. Trustee will now put him under to explain where the missing funds
> are, as reported by BST.

---

[19]    A copy of the Affidavit in Support of Counter Judgment of Divorce is annexed as Exhibit F to the Crane Decl.

*Id.* at ¶ 6.[20]

On November 8, 2019, the State Court entered the Judgment of Divorce.  The State Court

apparently found no merit to Jennifer's objections to the proposed judgment, or the matters that

she raised in her October 24 affidavit, as the court did not adopt Jennifer's distinction between

her right to an equitable distribution of the marital assets and her contingent claim to those assets

embodied in the Equitable Distribution Claim, and it did not modify, in any way, the Debtor's

Proposed Judgment of Divorce.  In part, the Judgment of Divorce orders that pursuant to the

"Term Sheet, [the Debtor] shall pay to [Jennifer] or on behalf of [Jennifer] a total amount of

$2,500,000 as her share of equitable distribution."  Judgment of Divorce at 6.  It also provides

that the Term Sheet "shall be incorporated herein by reference, [and] shall survive and shall not

be merged into [Judgment of Divorce.]"  *Id.* at 9.

The Debtor's Motion

In his Motion, the Debtor seeks an order of this Court pursuant to Bankruptcy Rule 9019

approving that portion of the Term Sheet that calls for the Debtor to make the Equitable

Distribution Payment to Jennifer, or for Jennifer's benefit, over a four year period, as her share

of equitable distribution, and for Jennifer to (i) surrender any claim to marital property; (ii)

submit to the Debtor, his attorneys, and the Chapter 7 Trustee, a comprehensive list of various

personal property that either Jennifer or the Debtor acquired during the marriage and that

Jennifer either retained possession of, donated, gifted, or sold after March 26, 2013; and (iii)

deliver to the Chapter 7 Trustee all of such personal property that remained in her possession or

was donated, gifted, or provided to a third party.  *See* Motion ¶¶ 8-10.  He also seeks  to expunge

the Equitable Distribution Claim pursuant to § 502(a) of the Bankruptcy Code and Bankruptcy

---

[20]    A copy of that affidavit is annexed as Exhibit G to the Crane Decl.

Rule 3007(a) on the grounds that the Divorce Judgment directs that the Debtor pay Jennifer

$2,500,000 as her share of equitable distribution, nothing in that judgment affords Jennifer any

further right to equitable distribution, and the Debtor, not his estate, is obligated to pay Jennifer

her share of equitable distribution.  *Id.* ¶ 13-17.  The Chapter 7 Trustee supports the Motion.

Jennifer opposes the Motion.  Briefly, she says that the Term Sheet does not require this

Court's review or approval because it does not call for the distribution of property of the

Debtor's estate or determine title of assets of the estate.  *See* Porter Decl. ¶ 8.  She also asserts

that in agreeing to accept the Equitable Distribution Payment, she did not release or waive her

contingent Equitable Distribution Claim to the extent that the Chapter 7 Trustee can identify and

recover marital assets.  *Id.* ¶ 2.

The Court considers those matters below.

Discussion

Request for Relief Under Rule 9019

In relevant part, Bankruptcy Rule 9019 states that "[o]n motion by the trustee and after

notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P.

9019(a).  As noted previously, in granting Jennifer stay relief, the Court authorized her to

proceed with all issues in the Matrimonial Action, including "leave to continue the Matrimonial

Action in all respects, including without  limitation . . . the rendering of judgment determining

the nature and extent of marital property, the nature and extent of Jennifer's interest in such

property, and the equitable distribution of such property[.]"  April 4 Order at 2.  In doing so,

however, the Court directed that:

> [I]n the event that Jennifer and the Debtor enter into a settlement agreement, any
> provisions of such an agreement that purports to determine the distribution of or

title to property of the bankruptcy estate shall not be effective with regard to such
property without this Court's review and approval.

*Id.* at 2-3.  As discussed above, under the Term Sheet, the Debtor and Jennifer (i) agreed to

liquidate and fix Jennifer's share of equitable distribution at in the sum of $2,500,000, (ii) the

Debtor agreed to satisfy that claim over time by making scheduled payments to or for Jennifer's

benefit out of his post-petition income, and (iii) Jennifer agreed to turn over her marital assets to

the Chapter 7 Trustee.  The Term Sheet does not purport to resolve, or even address, matters

relating to the allocation of estate assets among Jennifer and the Debtor and does not call for the

distribution of estate property among them.  As such, the Court finds merit to Jennifer's

objection and finds that the Term Sheet is not subject to Court approval.  Accordingly, the Court

denies this aspect of the Motion as moot.

Request for Relief Under Section 502 and Bankruptcy Rule 3007(a)

Under § 502(a) of the Bankruptcy Code, "a claim . . . proof of which is filed

under section 501 of this title, is deemed allowed, unless a party in interest . . . objects."  11

U.S.C. § 502(a).[21]  Upon the filing of an objection to a claim, "[t]he burden of proof . . .  rests on

different parties at different times."  *In re Allegheny Intern., Inc.*, 954 F.2d 167, 173 (3d Cir.

1992).  Initially, the claimant must allege facts sufficient to support the claim.  In that regard, "a

claim that alleges facts sufficient to support a legal liability to the claimant satisfies the

claimant's initial obligation to go forward."  *Id.*   The claim will be prima facie valid, "[i]f the

averments in [the] filed claim meet this standard of sufficiency[.] *Id.* (citation omitted).  *See also*

Fed. R. Bankr. P. 3001(f) ("A proof of claim executed and filed in accordance with these rules

shall constitute prima facie evidence of the validity and amount of the claim.").  The burden then

---

[21]    Bankruptcy Rule 3007 addresses the procedures for "Objections to Claims."  There is no dispute that the Debtor
has adhered to those procedures in filing his Claim Objection.

shifts to the objector to rebut the presumption of the prima facie validity of the claim.  To do so,

"the 'objecting party must produce evidence equal in force to the prima facie case which, if

believed, would refute at least one of the allegations essential to the claim's legal sufficiency.'"

*Scafuro v. PennyMac Loan Servs., LLC (In re Scafuro)*, No. 12-10902, 2013 WL 4776740 at *2

(Bankr. D. Vt. Sept. 4, 2013) (citation omitted).  If it does so, the burden shifts back to the

claimant to prove by a preponderance of the evidence that under applicable law the claim should

be allowed.  *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000) ("Once an

objectant offers sufficient evidence to overcome the prima facie validity of the claim, the

claimant is required to meet the usual burden of proof to establish the validity of the claim.")

*See also In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991) ("[T]he ultimate burden of persuasion is

always on the claimant. Thus, it may be said that *the proof of claim is some evidence as to its

validity and amount. It is strong enough to carry over a mere formal objection without more.*")

(internal quotation marks and citation omitted.).  Jennifer executed and filed the Equitable

Distribution Claim in accordance with the Bankruptcy Rules.  There is no dispute that the filed

claim constitutes prima facie evidence of the validity of the contingent claim.  Accordingly, in

resolving this aspect of the Motion, the Court must determine whether the Debtor has rebutted

the presumption of the prima facie validity of that claim and, if so, whether Jennifer has met her

burden of demonstrating the validity of the Equitable Distribution Claim.

Section 502(b) sets forth the grounds for disallowing a properly filed proof of claim.  *See*

11 U.S.C. § 502(b); *see also Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec.

Co.,* 549 U.S. 443, 449 (2007) (holding that, under the Bankruptcy Code, the court "'shall allow'

[a] claim 'except to the extent that' the claim implicates any of the nine exceptions enumerated

in § 502(b).");  *HSBC Bank USA, N.A. v. Calpine Corp.,* No. 07 Civ. 3088 (GBD), 2010 WL

3835200 at *5 (S.D.N.Y. Sept. 15, 2010) ("All claims are allowed unless specifically proscribed

by one of the nine exceptions listed in § 502(b).") (citing *Travelers,* 549 U.S. at 449, 127 S.Ct.

1199). As relevant, § 502(b) states that if a party in interest objects to a claim, the Court:

> [A]fter notice and a hearing, shall determine the amount of such claim in lawful
> currency of the United States as of the date of the filing of the petition, and shall
> allow such claim in such amount, except to the extent that—
>
> > (1) such claim is unenforceable against the debtor and property of
> > the debtor, under any agreement or applicable law for a reason
> > other than because such claim is contingent or unmatured[.]

11 U.S.C. § 502(b)(1). The Debtor contends that the Judgment of Divorce was a final settling of

accounts between the Debtor and Jennifer, including resolution of all matters relating to their

respective rights to equitable distribution of the marital assets, and that it cannot be amended or

revisited by this or any other court. Reply ¶ 8. He asserts that through that judgment, Jennifer's

share of equitable distribution was fixed at $2,500,000, to be paid by the Debtor out of his post-

petition assets, with Jennifer surrendering all marital assets in her possession or control to the

Chapter 7 Trustee. *See* Judgment of Divorce at 6-7. In his joinder to the Motion, the Chapter 7

Trustee contends that the Term-Sheet, together with the Judgment of Divorce,[22] render any claim

by Jennifer against the Debtor with respect to the equitable distribution of marital assets

unenforceable. Chapter 7 Trustee's Joinder ¶ 6. He also contends that because the Term Sheet

was incorporated into the Judgement of Divorce entered by the State Court, Jennifer is barred by

principles of res judicata and collateral estoppel from seeking to revise the Term Sheet and

Judgement of Divorce through the prosecution of her claim. *Id.* ¶ 7. Thus, he maintains that the

Court must disallow and expunge the Equitable Distribution Claim pursuant to § 502(b)(1) of the

---

[22]    The Chapter 7 Trustee uses the term "Settlement Order" in reference to the Judgment of Divorce dated
November 8, 2019, which incorporated the settlement terms under the Term Sheet.

Bankruptcy Code because it is unenforceable against the Debtor or property of the Debtor. *Id.* ¶ 6.

In New York, the "[p]arties to an action for dissolution of a marriage are entitled to anticipate the final resolution of all issues relating to the marriage relationship without fragmentation and are obligated to litigate all issues affecting the marriage in that action." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Benjamin*, 1 A.D. 3d 39, 40 (1st Dept 2003) (citing *Boronov v. Boronov*, 71 N.Y. 2d 284, 290-91 (1988)). For that reason, "important issues ancillary to the dissolution of the marriage, such as title to marital property, must be raised in the divorce proceeding, and if they could have been, but were not, raised they may not thereafter be raised in a separate action." *Id.* (citation omitted). In the Matrimonial Action, Jennifer sought a judgment of divorce pursuant to § 170(7) of the of the New York Domestic Relations Law (the "DRL"). That section states that an action for divorce may be maintained by a husband or wife to procure a judgment divorcing the parties and dissolving the marriage on the grounds that:

> The relationship between husband and wife has broken down irretrievably for a period of at least six months, provided that one party has so stated under oath. No judgment of divorce shall be granted under this subdivision unless and until the economic issues of equitable distribution of marital property, the payment or waiver of spousal support, the payment of child support, the payment of counsel and experts' fees and expenses as well as the custody and visitation with the infant children of the marriage have been resolved by the parties, or determined by the court and incorporated into the judgment of divorce.

DRL § 170(7). Under the plain language of the statute, the court cannot grant a judgment of divorce under § 170(7) unless it determines that the relationship between husband and wife has broken down irretrievably for a period of at least six months, and the economic issue of, the equitable distribution of marital property, among others, is determined by the court and incorporated into the judgment of divorce. *Id. See also Trbovich v. Trbovich*, 122 A.D. 3d 1381,

1382 (N.Y. App. Div. 2014) ("The requirements for a divorce under [§ 170(7)] are (1) a statement under oath by one party that the relationship has broken down irretrievably for a period of at least six months; and (2) a resolution of 'the economic issues of equitable distribution of marital property, the payment or waiver of spousal support, the payment of child support, the payment of counsel and experts' fees and expenses as well as the custody and visitation with the infant children of the marriage[.]'" (quoting § 170(7)).

The Judgment of Divorce meets those standards.  Specifically, the State Court determined that there were grounds for "dissolv[ing] the marriage between the Plaintiff, Jennifer Brown, and the Defendant, Michael Brown, by reason of: the relationship between Plaintiff and Defendant has broken down irretrievably for a period of at least six months pursuant to Domestic Relations Law § 170(7)."  *See* Judgment of Divorce at 2.  In addition, it found that "[t]he Parties settled the . . . financial and custody issues by the So-Ordered Term Sheet dated July 30, 2019," and that "in accordance with Paragraph 2 on pages 1 through 2 of the Term Sheet, Defendant shall pay to the Plaintiff or on behalf of the Plaintiff a total amount of $2,500,000 as her share of equitable distribution[.]"  *Id.* at 1, 6.  In that regard, the Judgment of Divorce resolved all matters relating to the identification and distribution of marital property and plainly was "a final settling of accounts between marital partners with an equitable interest in all marital property[.]"  *Pangea Capital Mgmt. LLC,* 34 N.Y. 3d 38, 46 (2019)  (internal quotation marks omitted) (citation omitted).  It is binding on both the Debtor and Jennifer.

Broadly speaking, "res judicata means that a matter once judicially decided is finally decided."  *Murphy v. Gallagher*, 761 F.2d 878, 879 (2d Cir. 1985).  The doctrine of res judicata dictates that a "final judgment on the merits of an action precludes the parties or their privies

from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981).

> Simply put, the doctrine of res judicata provides that when a final judgment has been entered on the merits of a case, [i]t is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.

*Nevada v. United States,* 463 U.S. 110, 129–30, 103 S.Ct. 2906, 2918, 77 L.Ed.2d 509 (1983) (internal quotation marks omitted).  In New York, res judicata is akin to the doctrine of "claim preclusion."  *Murphy v. Gallagher*, 761 F.2d at 879.  Under that doctrine

> a judgment, once rendered by a court of competent jurisdiction, will be treated thereafter as the "full measure of relief to be accorded between the same parties on the same ... 'cause of action.' " *Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.,* 575 F.2d 530, 535 (5th Cir.1978). Claim preclusion prevents litigation of a matter that could have been raised and decided in a previous suit, whether or not it was raised. *See Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* §§ 4402, 4403 (1981); Restatement (Second) of Judgments, Introductory Note before ch. 3 at 131 and §§ 18, 19 (1982). Although fair play demands that a party have his day in court, the doctrine of res judicata forecloses a second day.

*Id.*  In that way, res judicata is an absolute bar "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1463 (2d Cir. 1996) (internal citation and quotation marks omitted).

Claim preclusion applies if the previous decision was: "(1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 221–22 (2d Cir. 2012).  In considering the preclusive effect of the Divorce Judgment, the Court must look to New York law.  *See New York v. Sokol (In re Sokol)*, 113 F.3d

303, 306 (2d Cir. 1997) ("[T]he preclusive effect of a state court determination in a subsequent federal action is determined by the rules of the state where the prior action occurred[.]") (citing 28 U.S.C. § 1738). *See also Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.")   New York has adopted a "transactional approach" to res judicata. *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). That approach "bar[s] a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Id.* (citation omitted). *See also O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (1981) (Under New York's transactional analysis approach to deciding res judicata issues, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." (citation omitted)).   In general, in New York, "a final judgment of divorce issued by a court having both subject matter and personal jurisdiction has the effect of determining the rights of the parties with respect to every material issue that was actually litigated or might have been litigated[.]" *Rainbow v. Swisher,* 72 N.Y.2d 106, 110, 531 N.Y.S.2d 775, 777 (1988). In that regard, "absent unusual circumstances or explicit statutory authorization, the provisions of the judgment are final and binding on the parties, and may be modified only upon direct challenge." *Id.*

The nature and extent of Jennifer's share in the marital assets was an issue before the State Court in the Matrimonial Action.  In the Term Sheet, Jennifer accepted the Equitable Distribution Payment as her share of equitable distribution.  The Term Sheet is incorporated into

the Judgement of Divorce, and the State Court had jurisdiction to issue the judgment.  The

Judgment of Divorce is a final judgment on the merits that resolves all matters that were or could

have been raised in the Matrimonial Action, including all those related to equitable distribution

of the marital assets.  Jennifer relied on the BST Report and FRA Report in pursuing her

equitable distribution claim in the Matrimonial Action.  All matters relating to the equitable

distribution of the marital property, including Jennifer's right to a share of the Unaccounted For

Marital Property, necessarily were resolved in the Judgement of Divorce.  *See Boronow v.*

*Boronow,* 71 N.Y.2d 284, 290, 525 N.Y.S.2d 179, 183 (1983) ("In a matrimonial action, where

the essential objective is to dissolve the marriage relationship, questions pertaining to important

ancillary issues like title to marital property are certainly intertwined and constitute issues which

generally can be fairly and efficiency resolved with the core issue. The courts and the parties

should ordinarily be able to plan for the resolution of all issues relating to the marriage

relationship in the single action.").  *See also Harrison v. Harrison,* 134 A.D.2d 567, 568, 521

N.Y.S.2d 466, 468 (2d Dep't 1987) ("Inasmuch as the matrimonial action was the appropriate

forum within which to properly adjudicate the marital property and financial issues that are

raised herein, the parties had the right to expect that any matters of that sort not considered in the

matrimonial action would not be litigated elsewhere.")  Jennifer incorporated the BST Report

and FRA Report in her Equitable Distribution Claim.  In substance, in that claim she is asserting

the same claim against the Debtor that she settled in the Matrimonial Action.  She is barred from

doing so by application of the principle of res judicata.  The Debtor has rebutted the presumption

of the prima facie validity of the Equitable Distribution Claim, and demonstrated that Jennifer is

entitled to no more than the Equitable Distribution Payment in full satisfaction of her Equitable

Distribution Claim.[23]  Accordingly, the Debtor has demonstrated grounds for expunging the

claim. *Travelers Cas. & Sur. Cor. Of America v. Pac. Gas & Elec. Co.,* 549 U.S. 443, 127 S.Ct.

1199, 1204 (2007) (11 U.S.C. § 502(b)(1) "is most naturally understood to provide that, with

limited exceptions, any defense to a claim that is available outside of the bankruptcy context is

available in bankruptcy."); *see also In re LightSquared Inc.*, 504 B.R. 321, 336 (Bankr. S.D.N.Y.

2013) (the "language could not be plainer – if a claimant would be estopped under non-

bankruptcy law from having a valid claim against the debtor, a party may seek disallowance of

the claim under section 502(b)(1)."); *In re Ernst,* 382 B.R. 194, 197 (S.D.N.Y. 2008) ("[T]here is

nothing in [section 502] that requires a court to ignore that the claim is no longer valid under

state law.").  In reaching this conclusion, the Court finds no merit to Jennifer's contentions to the

contrary and objections to the Motion.  The Court reviews them below.

First, Jennifer contends that the Court should not expunge the Equitable Distribution

Claim because she is entitled to satisfy it out of the Debtor's pre and post-petition assets, and that

in agreeing in the Term Sheet to accept the Equitable Distribution Payment as her "share of

equitable distribution," she did not liquidate the Equitable Distribution Claim or compromise her

alleged right to satisfy that claim out of the property of the Debtor that comprises the bankruptcy

estate.  Sur-Reply at 1-2; Porter Decl. ¶ 2.  She maintains that the Equitable Distribution Claim

cannot be expunged pursuant to §502(b)(1), because it remains subject to resolution in this

chapter 7 case and that once liquidated, she will have a claim that is enforceable against estate

property.  Jennifer MOL at 16; Sur-Reply at 1-2.  The Court finds no merit to that argument.

---

[23]    When the elements for res judicata are satisfied, bankruptcy courts may look behind a state court decision only
where such judgment was obtained by fraud or collusion, or where the state court lacked jurisdiction. *Kelleran v.
Andrijevic,* 825 F.2d 692, 694 (2d Cir.1987) (citations omitted).  Jennifer does not assert that the Divorce Judgment
was obtained by fraud or collusion.

"Under New York law, one spouse's rights in marital property owned by the other are inchoate and do not vest until entry of a judgment of divorce." *DiGeronimo v. Weissberg (In re DiGeronimo),* 354 B.R. 625, 637 (Bankr. E.D.N.Y. 2006); *see also In re Anjum,* 288 B.R. 72, 76 (Bankr. S.D.N.Y. 2003); *In re Cole,* 202 B.R. 356, 360 (Bankr. S.D.N.Y. 1996). As a consequence, "[i]f the state court enters a divorce decree, makes an equitable distribution award and transfers title to the nondebtor spouse prior to bankruptcy, the property will not become property of the debtor spouse's estate." *Schachter v. Lefrak (In re Lefrak)*, 223 B.R. 431, 439 (Bankr. S.D.N.Y. 1998); *see also In re Greenwald,* 134 B.R. 729, 731 (Bankr. S.D.N.Y. 1991). In contrast, where a spouse that is party to a divorce action files for bankruptcy before the state court determines the parties' rights to marital property, the non-debtor spouse will not have a recognizable property interest in the debtor's property. *In re DiGeronimo,* 354 B.R. at 637. In such a case, "[t]he debtor's property comes into the bankruptcy estate free from the [non-debtor] spouse's inchoate interest, and the [non-debtor] spouse has a claim to the debtor's property to the same extent as does any other unsecured creditor." *Id. See also Musso v. Ostashko,* 468 F.3d 99, 105 (2d Cir. 2006) (finding that at "no point prior to judgment does [DRL § 236] create any contingent or present vested interests, legal or equitable, by virtue of the parties' marital status or prior to a judgment dissolving their union" (citation omitted)). The Judgement of Divorce became effective post-petition on November 8, 2019. Since the Debtor's and Jennifer's marriage was not dissolved prepetition, Jennifer's right to the Equitable Distribution Payment agreed by the Debtor and Jennifer in the Term Sheet, and fixed by the State Court in the Judgment of Divorce, gave rise to a general unsecured claim in that amount against the Debtor's estate. *See In re DiGeronimo,* 354 B.R. at 637; *see also Osekavage v. Mergenthaler (In re Mergenthaler),* 2015 WL 13227954, No. 15-CV-02031(JS) at *3 (E.D.N.Y. 2015); *In re Bellafiore,* 492 B.R.

26

109, 116, 117 (Bankr. E.D.N.Y. 2013); *In re Anjum,* 288 B.R. at 77; *In re Lefrak,* 223 B.R. at

439; *In re Cole,* 202 B.R. at 360; *Goldberg v. Hilsen (In re Hilsen),* 100 B.R. 708, 711 (Bankr.

S.D.N.Y. 1989), *rev'd on other grounds,* 119 B.R. 435 (S.D.N.Y. 1990).

Jennifer and the Debtor agreed that the Equitable Distribution Payment would be made

from the Debtor's post-petition earnings.  However, Jennifer had no right to payment from those

assets because the Debtor's post-petition earnings do not constitute property of the Debtor's

estate available for distribution to his creditors.  Section 541(a)(6) of the Bankruptcy Code

excludes from the bankruptcy estate "earnings from services performed by an individual debtor

after the commencement of the case."  11 U.S.C. § 541(a)(6).  "The decisive factor in

determining whether post-petition income of the debtor will be deemed property of the estate is

whether that income accrues from post-petition services of the debtor."  *In re Sloan,* 32 B.R. 607,

611 (Bankr. E.D.N.Y. 1983).  Neither party asserts that the Debtor's post-petition income

accrued on account of prepetition services or contracts or would otherwise be part of the

bankruptcy estate.  Moreover, the Debtor's post-petition earnings are not part of the Debtor and

Jennifer's marital assets.  The theory underlying New York's equitable distribution law is that

"marriage represents an economic partnership to which both parties contribute as spouse, parent,

wage earner or homemaker."  *U.S. v. Butler,* 543 F. App'x. 95, 96 (2d Cir. 2013) (quoting

*Commodity Futures Trading Comm'n v. Walsh,* 927 N.Y.S. 2d 821, 826 (N.Y. 2011).  Section

236 of the Domestic Relations Law provides that "all property acquired either by both spouses

during the marriage and before the execution of a separation agreement or the commencement of

a matrimonial action, regardless of the form in which title is held" is marital property.  DRL §

236(B)(1)(c).  The Matrimonial Action was pending when the Debtor commenced this

bankruptcy case.  Prior to the dissolution of the marriage the court "shall determine the

27

respective rights of the parties in their separate or marital property, and shall provide for the

disposition thereof in the final judgment." DRL § 236(B)(5)(a).  The Equitable Distribution

Claim is a general unsecured claim against the Debtor's estate.  Jennifer had no right to satisfy

that claim out of the Debtor's post-petition assets, or the couple's marital assets.  She settled the

claim in exchange for the Equitable Distribution Payment from the Debtor out of his post-

petition income (which she was not otherwise entitled to), and her promise to identify and

turnover marital assets in her possession to the Chapter 7 Trustee.  *See* Term Sheet ¶¶ 2-5.

Next, Jennifer complains that Debtor's counsel  "grossly overstates and mischaracterizes

the settlement actually reached by the parties, as memorialized in the Term Sheet" when counsel

asserts that "Jennifer agreed to settle the issue of equitable distribution in the Matrimonial Action

through her receipt of the Equitable Distribution Payment, which will be made in installments

over the next 3 ½ years."  Porter Decl. ¶ 7.  Jennifer denies that the Term Sheet provides for that

treatment of her Equitable Distribution Claim and denies that she agreed to such treatment of the

claim.  *Id.*  She asserts that a careful review of the Term Sheet will show that she did not

discharge or release the Debtor and did not explicitly agree to withdraw her proof of claim or

waive her rights to a share of undisclosed assets.  Sur-Reply at 1; Porter Decl. ¶ 6; Jennifer MOL

at 14.  She maintains that her proof of claim survived the settlement embodied in the Term Sheet.

Sur-Reply at 1.  In particular, she says that "the Term Sheet does not contain any explicit release

language, any acknowledgment that adequate financial disclosures were made, or any waiver of

the right to reopen the agreement in the event the Debtor is shown to have concealed assets, as

[Jennifer] believes he did."  *Id.*; Jennifer's MOL at 14; Porter Decl. ¶ 6 (in negotiating the Term

Sheet,  Jennifer did not agree "either explicitly or implicitly that [she] would waive, release, or

withdraw her contingent claim in this Court for her equitable share of marital assets concealed by

28

the debtor and recovered by the Bankruptcy Trustee[.]").  Indeed, Jennifer maintains that a

"desirable aspect[] of the settlement as memorialized in the Term Sheet is that it does not provide

for distribution to Jennifer of bankruptcy estate assets, which would be subject to approval (or

disapproval) by this Court."  Porter Decl. ¶ 8; Jennifer MOL at 1, 13-14.  According to Jennifer,

the only issue that this Court must decide in considering whether to expunge the Equitable

Distribution Claim is whether the Term Sheet contains a sufficiently explicit waiver of her right

to a share of the Unaccounted For Marital Assets.  Jennifer MOL at 14; Sur-Reply at 3-4.  She

maintains that given the complete absence of any explicit language waiving the claim in the

Term Sheet, there was no such waiver.

This is the same argument that Jennifer made to the State Court when she unsuccessfully

objected to the Debtor's Proposed Judgment of Divorce.  As discussed above, in her Affidavit in

Support of Counter Judgment of Divorce, Jennifer argued that she "never . . . agreed to . . .

abandon and/or withdraw [the Equitable Distribution Claim]," that she "did not and never

intended to resolve . . . [her] rights to assert and enforce [her] equitable distribution rights in

bankruptcy court[,]" and the "Term Sheet does not contain a release and/or discharge of [her]

equitable distribution rights against [the Debtor]."  *See* Affidavit in Support of Counter Judgment

of Divorce ¶¶ 2(a)-(c).  The State Court rejected that argument and adopted the form of the

Judgement of Divorce submitted by the Debtor.  Jennifer did not appeal or otherwise challenge

the entry of the Judgment of Divorce.  To the contrary, Jennifer has embraced the Judgement as

there is no dispute that she has accepted payments under the Judgement from the Debtor totaling

$500,000.  In that way, Jennifer has ratified the agreement in the Term Sheet that is incorporated

in the Judgment of Divorce.  *See Phillips S. Beach LLC v. ZC Specialty Ins. Co.,* 867 N.Y.S. 2d

386, 387 (N.Y. Sup. Ct. 2008) (A ratification occurs when a party accepts the benefits of a

29

contract and fails to act promptly to repudiate it.); *see also Panaggio v. Panaggio,* 684 N.Y.S. 2d

732, 733 (N.Y. App. Div. 1998) (Wife could not obtain rescission of separation agreement on

grounds of fraud and duress because wife was represented by counsel during protracted

settlement negotiations and agreed to stipulation in open court, and wife ratified agreement by

continuing to accept benefits under the agreement for years).  There is no merit to Jennifer's

arguments to the contrary.

   Third, Jennifer contends that the Term Sheet is not enforceable because the Debtor, not

the Chapter 7 Trustee, is party to the agreement.  The Court finds no merit to that argument.

Although the Chapter7 Trustee is not a party to the Term Sheet, he supports the Debtor and, as

the estate's representative, wholly endorses the Motion.  Jennifer also asserts that the agreement

is not enforceable because the Term Sheet implicitly acknowledges that it does not represent the

entire agreement between the parties.  Jennifer's MOL at 17.  As support, Jennifer cites to the

following provisions in the Term Sheet:

> ¶ 22.    This Term Sheet is intended to be a fully binding agreement between the
> parties.   Although the parties intend to enter into a more detailed agreement, in
> the event that they are unable to do so, this Term Sheet shall remain in full force
> and effect and shall constitute an agreement pursuant to DRL § 236(B)(3).
>
> *            *            *            *
>
> THE PARTIES HEREBY AGREE, that the terms set forth above shall be set
> forth in a Stipulation of Settlement resolving all of the financial and custodial
> issues between them in the dissolution of their marriage and that neither party
> shall demand a change to the terms as set forth herein, noting that where certain
> items are to be determined, discussed, defined, set forth more fully in a
> Stipulation, or any other like language, the clarification and addition of those yet-
> un-finalized terms shall not alter the material agreed-upon terms set forth herein.
> The parties further agree that this Term Sheet may be executed in counterparts.

Term Sheet at 16, 18.  Jennifer contends that the agreement expressly contemplates and

provides for the possibility of further agreements between Jennifer and the Debtor

resolving issues not expressly resolved in the Term Sheet.  Jennifer MOL at 17.

Jennifer's contention is belied by the plain language of the agreement.  The Term Sheet is

clear that it encompasses the material terms of the Debtor and Jennifer's agreement

because it states that any additional Stipulation of Settlement "shall not alter the material

agreed-upon terms herein."  The terms of the agreement addressing the resolution of

Jennifer's share of equitable distribution plainly are "material agreed-upon terms" in the

Term Sheet.  Moreover, as set forth above, the Term Sheet states that "[a]lthough the

parties intend to enter into a more detailed agreement, in the event that they are unable to

do so, this Term Sheet shall remain in full force and effect and shall constitute an

agreement pursuant to DRL § 236(B)(3)."[24]   The Special Referee made that point on the

record before asking Jennifer to allocute to the agreement,[25] and in so allocuting, Jennifer

acknowledged that the Term Sheet resolved all financial issues in the Matrimonial

Action.  *See* July 30 H'rg Tr. 3:12-20.  Finally, the Term Sheet was incorporated into the

Judgment of Divorce, which necessarily resolved all economic issues between the parties

---

[24]    Domestic Relations Law § 236(B)(3) provides, in relevant part:

> An agreement by the parties, made before or during the marriage, shall be valid and enforceable in a matrimonial action if such agreement is in writing, subscribed by the parties, and acknowledged or proven in the manner required to entitle a deed to be recorded.

DRL § 236(B)(3).

[25]    The Special Referee stated, as follows:

> I am incredibly pleased that following discussions this morning with attorneys again, that I've been presented with what is called a so-ordered term sheet, which I have, in fact, so-ordered six copies of. And I use the term "term sheet" loosely.  Most term sheets are one or two pages.  This is actually a 20-page document including the signatures.  But it is anticipated that there will be an even more fully-formed agreement between the parties.  Indeed, the term sheet so provides in Paragraph 22 that this term sheet is intended to be a fully binding agreement between the parties, although the parties intend to enter into a more detailed agreement. In the event they are unable to do so, this term sheet shall remain in full force and effect and shall constitute an agreement pursuant to DRL Section 263 (b) (3).

July 30 H'rg Tr. 3:12-20.

including equitable distribution pursuant to DRL § 170(7).  *See A.C. v. D.R.*, 927 N.Y.S.

2d 496, 507 (N.Y. Sup. Ct. 2011) (holding that court could not grant partial summary

judgment as to grounds for divorce and reserve for trial issues of equitable distribution of

marital assets.  The court commented that the DRL "directs that a judgment of divorce

may not be '*granted*' [under DRL § 170(7)] until all the financial issues are complete"

(emphasis in original)).

Fourth, Jennifer contends that the Debtor's efforts to expunge her Equitable

Distribution Claim are inconsistent with his contention that he has not concealed assets.

She reasons that if there are no concealed assets to discover, the Chapter 7 Trustee will

find nothing, and Jennifer's contingent claim would be worthless.  Jennifer MOL at 18.

She asserts that on the other hand, if there are concealed assets that the Chapter 7 Trustee

discovers, it will be clear that her settlement under the Term Sheet was made in reliance

of false representations by the Debtor and her Equitable Distribution Claim has value.  *Id.*

She concludes that there is no reason to expunge her claim before the Chapter 7 Trustee

completes his investigation and it would be inequitable to deprive Jennifer of her right to

assert her "claim to her rightful share of assets, if any, that have been concealed by the

Debtor." *Id.* at 19.  In support, Jennifer relies on the BST Report, which she asserts,

establishes that the Debtor "has not accounted for his wealth and assets, or that another

party is holding assets for him[.]" *Id.* at 18.  The Court finds no merit to this argument.

Jennifer executed the Term Sheet upon the advice of her counsel in the early stages of the

trial before the Special Referee to resolve all of the open economic and financial issues in

the Matrimonial Action, including, specifically, the whereabouts of the Unaccounted For

Marital Assets.  Moreover, there is no merit to Jennifer's contention that she relied on

false information in agreeing to the Term Sheet.  She was fully aware of the contents of

the BST Report and retained her own expert that produced the FRA Report.  In agreeing

to the Term Sheet, she advised the Special Referee that (i) she had sufficient information

about the Debtor's finances to be able to enter into the Term Sheet and (ii) she

understood each part of the Term Sheet and believed the Term Sheet to embody a fair and

reasonable settlement of the economic issues in the Matrimonial Action.  July 30 H'rg Tr.

4:20-22; 5:6-9; 8:10-13.  Jennifer could have tried the open economic issues to

conclusion before the Special Referee.  Upon advice of counsel, she elected to settle

those matters on the terms set forth in the Term Sheet.  Any doubt that Jennifer was

uncertain of the path she was taking in agreeing to the Term Sheet is dispelled by her

allocution to the Special Referee, also with the guidance of her counsel.  The Debtor's

effort to expunge the Equitable Distribution Claim is not inconsistent with his contention

that he has not concealed assets, as much as it is consistent with the parties' resolution of

that claim by means of the Equitable Distribution Payment.

Finally, Jennifer contends that the Term Sheet, as a stipulation of settlement, is not

entitled to res judicata.  In substance, she argues that the Term Sheet is simply an agreement

regarding equitable distribution and other issues, made in reliance on the facts disclosed in

discovery in the Matrimonial Action.  Sur-Reply at 5.  She notes that it contains no stipulations

of fact regarding the assets considered and divided in the equitable distribution provisions, nor

does it state that she is releasing her claim to a share of the Unaccounted For Marital Assets.  *Id*.

However, as noted, the agreement does not call for the division of assets in connection with the

equitable distribution provisions.  In satisfaction of her share of equitable distribution, Jennifer

agreed to take the Equitable Distribution Payment (out of the Debtor's otherwise exempt post-

petition earnings) and to surrender her marital property to the Chapter 7 Trustee.  Jennifer also

contends that for the Term Sheet to be res judicata on her claim, it required a stipulation to

findings of fact, which is absent from the Term Sheet because it did not settle, release, or dispose

of her Equitable Distribution Claim to assets that were wrongfully concealed from both the State

Court and this Court.  *Id.* at 2, 5.  In support of this proposition, Jennifer relies on *Arizona v.

California*, 530 U.S. 392, 414 (2000) and several other cases.  But, as noted previously, Jennifer

never had a claim to specific assets in this bankruptcy case to resolve her claim to equitable

distribution.  Moreover, the cases she cites are inapposite because  they address the issue of

whether settlement agreements are entitled to res judicata, while here, the Term Sheet was

incorporated into the Judgment of Divorce and it is the judgment, not the Term Sheet, to which

this Court gives res judicata effect.  The cases Jennifer cites support the proposition that a

settlement agreement that results in a final judgment on the merits is entitled to res judicata

effect. In *Arizona v. California*, the Supreme Court recognized the distinction between the

preclusive effect of a settlement as opposed to a consent judgment like the Judgment of Divorce.

530 U.S. 392, 414 (2000).  The Supreme Court observed that "settlement agreements ordinarily

occasion no *issue preclusion* . . . unless it is clear . . . that the parties intend their agreement to

have such an effect." *Id*.  However, the Supreme Court recognized that consent judgments

ordinarily support res judicata.  *Id.* [26]

---

[26]    The other cases that Jennifer cites are: *Jarry v. Nat'l Collegiate Student Loan Tr.*, No. 18-CV-0315 (SJF)
(ARL), 2019 WL 3326165 (E.D.N.Y. April 23, 2019); *Dunleavy v. First Am. Tit. Ins. Co. of N.Y.*, 499 N.Y.S. 2d
264 (3d Cir. 1986); *Ott v. Barash*, 491 N.Y.S. 2d 661, 668 (2d Dep't 1985); and *Peterson v. Forkey,* 376 N.Y.S. 2d
560, 561-62 (1st Dep't 1975).  As noted, they support the proposition that a settlement agreement that results in a
final judgment on the merits is entitled to res judicata effect.

In *Jarry v. Nat'l Collegiate Student Loan Tr.*, 2019 WL 3326165 (E.D.N.Y. April 23, 2019), the plaintiffs sought
damages from the defendants based upon their alleged violations of the Fair Debt Collection Act and New York
General Business Law.  Prior to the commencement of that action (the "EDNY Action"), certain of the defendants
(the "Moving Defendants") sued the plaintiffs in state court (the "New York Action") for damages based upon their

alleged defaults under their student loans. *Id.* at *1. The parties resolved that action pursuant to a Settlement Stipulation which resulted in the discontinuation, but not dismissal, of the action. The Moving Defendants sought summary judgment dismissing the EDNY Action pursuant to the doctrines of res judicata and collateral estoppel on the grounds that the matters at issue in the EDNY Action had been resolved on the merits pursuant to the Settlement Stipulation in the New York Action. *Id.* at *2. In her Report and Recommendation, Magistrate Judge Lindsay recommended denying summary judgement. In part, she reasoned that the Settlement Stipulation did not constitute a final judgement on the merits of the matters at issue in the New York Action for purposes of res judicata, because the stipulation did not result in the dismissal of that action, with prejudice. *Id.* at *4. ("Under New York law the doctrines of collateral estoppel and res judicata are inapplicable to cases disposed of by a stipulation of settlement [b]ecause no order or final judgment was ever entered dismissing the prior action. . . . There is nothing in the record indicating that an order or judgment has been entered which can serve as the basis for the application of the doctrines of collateral estoppel and res judicata. . . . Thus, at this juncture, there is no final judgment in place in the New York Action. Accordingly, the undersigned respectfully recommends that Defendants' motion for summary judgment be denied.") (internal quotation marks and citations omitted).

In *Dunleavy v. First Am. Tit. Ins. Co. of N.Y.*, 499 N.Y.S. 2d 264 (3d Cir. 1986), the plaintiff ("Agent"), in his capacity as agent for defendant ("Title Insurer"), obtained title insurance for a third party (the "Insured") covering certain real property. A dispute involving that property subsequently arose, and the Insured was named as a defendant in an action based on trespass and encroachment. *Id.* at 265. The Agent and Title Insurer denied coverage and the Insured commenced a third-party action against them. The Title Insurer refused to defend the Agent in the third-party action, and the Agent cross-claimed against the defendant for indemnification, in the event the Insured recovered a judgment against him. The cross-claim did not include a claim for counsel fees. *Id.* The parties to the original action entered into an in-court stipulation of settlement. As part of that stipulation, the Agent agreed to deliver to Title Insurer a general release limited to the cause of action set forth in the complaint and third-party complaint**.** *Id.* The Agent also agreed to discontinue his cross-claim against the Title Insurer upon the merits and with prejudice. *Id.* After the Agent was billed $15,400 for counsel fees, the Agent sued to collect those fees from the Title Company, based upon the Agent's contract with the Title Company. *Id.* The Title Company moved to dismiss the complaint based on, among other things, the defenses of documentary evidence, collateral estoppel and res judicata. Special Term granted the motion, holding that the in-court stipulation in the original action precluded plaintiff from now seeking counsel fees. *Id.* The Appellate Court reversed. It found that the trial court failed to disclose in its decision which of defendant's theories it relied upon in dismissing the complaint. However, it rejected the defenses of res judicata and collateral estoppel because those two theories depend upon a final determination of issues by the forum in which the proceeding took place, and no such determination was entered by the trial court. *Id.* ("Special Term did not disclose in its decision which of defendant's theories it relied upon in dismissing the complaint. At the outset, we reject the defenses of res judicata and collateral estoppel. Those two theories depend upon a final determination of issues by the forum in which the proceeding took place. In this instance, it can only be assumed that the terms of the settlement became sufficiently attractive to all of the parties in the original action that they decided to forego issue determination by the court.").

In *Ott v. Barash*, 491 N.Y.S.2d 661, 662 (1st Dep't 1975), the question before the court was whether the plaintiff, who was allegedly injured as a result of negligence of a New York state (the "State") employee could maintain a cause of action for negligence against that employee after having settled a prior action against the State to recover damages for the same injuries. The plaintiff was allegedly injured after she was thrown from a horse while riding on State property. She sued the State for damages in the Court of Claims and ultimately settled the claim. By its terms, the release in the settlement agreement (the "Settlement Agreement") made no provision for the release of the State's employees. *Id.* at 663. Thereafter, the plaintiffs sued the State employee in New York State Supreme Court for damages based upon causes of action sounding in negligence and intentional tort. The defendant moved to dismiss the action on several grounds, including that the State was the real party in interest and that the action was barred by principles of res judicata based upon the release of the State in the Settlement Agreement. *Id.* The trial court granted the motion to dismiss the causes of action sounding in tort but denied it as to the negligence claims. In affirming the trial court's denial of the motion to dismiss the negligence claim, the Appellate Division reasoned, in

Jennifer also contends that application of the doctrine of res judicata does not bar her

from asserting the Equitable Distribution Claim because the issue that was resolved in the

Matrimonial Action was the "equitable distribution" of marital property while the matter at issue

in the Bankruptcy Court is the recovery of fraudulently concealed and undisclosed pre-petition

assets. *See* Sur-Reply at 2. But Jennifer had no general unsecured claim against the Debtor in

this case other than her claim to her share of equitable distribution. That is the claim that the

parties resolved in the Term Sheet. Alternatively, she asserts the issue should be the treatment

that is afforded to "undisclosed and unaccounted-for assets that could not be included in the

equitable distribution scheme because they were undisclosed[.]" *Id.* The Court finds no merit to

this contention either. The Court directed the parties to resolve all matters relating to equitable

---

part, that the doctrine of res judicata was not applicable because the Settlement Agreement with the release did not constitute a final judgment of the claims against the State in the Court of Claims on the merits. *Id.* at 668. ("It is evident that a general prerequisite to invocation of either res judicata or collateral estoppel is the existence of a final judgment, i.e., a final judicial determination which necessarily decided the very cause of action or issue that a party now seeks to litigate in a subsequent action or proceeding . . . In this case it is clear that the foregoing prerequisite was not met. The proceedings in the Court of Claims were not terminated by entry of a final judgment or other judicial determination on the merits. Rather, the claim was terminated upon the execution of a settlement and release. The settlement, prior to the entry of judgment, served to finalize the action without regard to the validity of the original claim, and the action was accordingly considered, in contemplation of law, as if it had never begun. . . . Therefore, there is no basis upon which to apply either res judicata or collateral estoppel.") (internal quotations and citation omitted).

Finally, in *Peterson v. Forkey,* 376 N.Y.S. 2d 560 (1st Dep't 1975), the defendant appealed a state court order granting summary judgment on plaintiff's claim for negligence in connection with an automobile accident based on a prior jury verdict decisive on the issue of negligence of the defendant. *Id.* at 561. In that case, Peterson was driving an automobile in which Barcus was a passenger. The Peterson car collided with a truck driven by Forkey. Barcus sued Peterson and Forkey, and Peterson sued Forkey. *Id.* The Barcus case was tried to a jury on the issue of liability only. The jury returned a special verdict in favor of Barcus and specifically found Peterson to be free of negligence and found Forkey solely negligent. *Id.* After the verdict on liability, Barcus settled his claim and the action was never reduced to judgment by any party. *Id.* Based on the special verdict finding him free of negligence, Peterson moved for summary judgment in her action against Forkey, and the trial court granted the motion. *Id.* On appeal, the Appellate Division reversed. In doing so, it noted, in part, that "[b]oth the doctrines of *res judicata* and collateral estoppel have as their prerequisites the entry of a judgment[,]" and that "[n]either the verdict of a jury nor the findings of a court in a prior action upon the precise point involved in a subsequent action between the same parties constitute a bar, unless followed by a judgment based thereon, or into which the verdict or findings entered." *Id.* (internal quotations and citations omitted). Since no judgment had been entered in the prior litigation, the special verdict in favor of Peterson was not res judicata on the issue of her negligence. *Id.*

distribution in the State Court.  That is what the parties resolved in the Term Sheet.  Finally,

Jennifer argues that the Matrimonial Action should not be considered to be concluded because

the settlement agreement would have to be modified in the event that the Trustee finds the

Unaccounted For Martial Assets.  Sur-Reply at 2.  She contends that under those circumstances,

the Matrimonial Action would be reopened, and the equitable distribution provisions of the Term

Sheet revisited if the Trustee found substantial funds that the Debtor had failed to disclose.  *Id.*

However, the Judgment of Divorce does not provide for such treatment.  To the contrary, the

Divorce Judgment finally resolved all property issues that could have or should have been raised

in the Matrimonial Action.  *See* DRL § 170(7); *see also Boronov v. Boronov*, 71 N.Y. 2d 284,

290-91 (1988); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Benjamin*, 1 A.D. 3d 39, 40 (1st

Dept 2003); *Jackson v. Brinkman,* 814 N.Y.S. 2d 561 (N.Y. Sup. Ct. 2006); *Siegel v. Siegel*, 197

A.D.2d 569 (2d Dept 1993).[27]  In executing the Term Sheet and incorporating it into the Divorce

---

[27]    The Court notes that a stipulation of settlement which is incorporated but not merged into a judgment of divorce
survives the judgment by its terms and as matter of law.  *Siegel v. Siegel,* 197 A.D.2d 569, 570 (2d Dept 1993).  It is
a contract subject to the principles of contract construction and interpretation.  *See, e.g., Matter of Tannenbaum v.
Gilberg*, 134 A.D. 3d 846, 847 (2d Dept. 2015); *Hanau v. Cohen*, 121 A.D.3d 940, 941 (2d Dept. 2015).  Thus, "[i]t
is well settled that either party can bring a separate plenary action after the divorce judgment in order to enforce or
challenge the terms of a stipulation of settlement which is not merged into the judgment." *Sacks v. Sacks,* 220
A.D.2d 736, 737 (2d Dept 1995).  Nonetheless, where, like here, the stipulation addresses property issues which
could and should only be resolved in a divorce action, the parties are barred from revisiting those issues by
application of the principle of res judicata.  The case of *Siegel v. Siegel,* 197 A.D.2d 569, 570 (2d Dept 1993) is
instructive.  There an ex-husband appealed the dismissal of four claims he asserted against his former wife for
accounting of insurance proceeds received by the ex-wife pursuant to a prior stipulation in an action for a separation,
conversion of a 1979 Audi which was alleged to be marital property, conversion of the furnishings in the parties'
former marital home and breach of their separation agreement, which required the ex-wife's to submit proof of her
entitlement to $886.75 for medical bills.  *Id.* at 569-70.  Prior to the commencement of that action the parties entered
into a separation agreement that was incorporated but not merged into the judgment of divorce. *Id.* at 570.  On
appeal, the Appellate Division affirmed the dismissal of the husband's claims for accounting and conversion of the
1979 Audi; but reversed the dismissal of the claims for conversion of the furnishings from the marital home and
breach of the separation agreement.  It found that the claims for accounting and conversion of the 1979 Audi were
properly dismissed under principles of res judicata and collateral estoppel because they raised "property issues
which could and should have been resolved in the divorce action." *Id.* at 571 (citing *Boronov v. Boronow*,  71 N.Y.
2d 284).  Conversely, the Appellate Division found that claims for conversion of the furnishings from the marital
home and breach of the separation agreement could proceed because that the ex-husband merely sought to enforce
the terms to the separation agreement; and since the separation agreement survived as a matter of law, either party
could bring an action after the judgment of divorce to enforce its terms.  *Id.* at 570.  Here, the principle of res

Judgment, Jennifer assumed the risk that the Chapter 7 Trustee would uncover the Unaccounted

For Marital Assets when she agreed to the Term Sheet.  Moreover, Jennifer resolved the

Equitable Distribution Claim by accepting the Equitable Distribution Payment and surrendering

her rights to marital property to the estate (through the Chapter 7 Trustee).  All marital property –

including claims regarding the Unaccounted For Marital Assets – constitute property of the

Debtor's chapter 7 estate.

Conclusion

Based on the foregoing, the Court denies the Debtor's request for relief under Bankruptcy

Rule 9019 and grants the Debtor's motion to expunge the Equitable Distribution Claim.


SETTLE ORDER.

Dated: New York, New York
        March 13, 2020


/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge

---

judicata bars Jennifer from asserting the property issues underlying the Equitable Distribution Claim.  They were
finally resolved in the Divorce Judgment.