NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                          :

In re:                                     :          Chapter 7

    Michael Rodger Brown,         :          Case No. 18-10617 (JLG)

Debtor.                                :
-------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER DENYING MOTION
## FOR STAY OF ORDER EXPUNGING CLAIM PENDING
## <u>APPEAL PURSUANT TO FED. R. BANK. P. 8007</u>

<u>APPEARANCES</u>:

LAW OFFICES OF KENNETH L. BAUM LLC
167 Main Street
Hackensack, New Jersey 07601
By:    Kenneth L. Baum, Esq.

*Counsel to Michael Rodger Brown, Chapter 7 Debtor*


FISCHER PORTER & THOMAS, P.C.
560 Sylvan Avenue, Suite 3061
Englewood Cliffs, NJ 07632
By:    Arthur L. Porter, Jr., Esq.
         Aaron E. Albert, Esq.

*Counsel to Jennifer Brown*


AKERMAN LLP
666 Fifth Avenue
20th Floor
New York, NY 10022
By:    John P. Campo, Esq.

*Counsel to John S. Pereira, as Chapter 7 Trustee*
*for the Estate of Michael Rodger Brown*

**HONORABLE JAMES L. GARRITY, JR.**
**UNITED STATES BANKRUPTCY JUDGE:**

Introduction

Michael Brown (the "Debtor") commenced his voluntary chapter 7 case in this Court in 2018. At that time, he was being sued for divorce (the "Matrimonial Action") in the Supreme Court of the State of New York, County of New York, Matrimonial Term (the "State Court") by Jennifer Brown ("Jennifer"), now his ex-wife. In that action, Jennifer contended that the Debtor fraudulently concealed in excess of $12,000,000 in marital assets (the "Unaccounted for Marital Assets"). She timely filed a contingent, unsecured claim in this case in the sum of $6,375,000, representing her claim to equitable distribution of the marital assets, including to her share of the Unaccounted For Marital Assets (the "Equitable Distribution Claim").[1] This Court granted Jennifer relief from the automatic stay to permit her to prosecute the Matrimonial Action (including the liquidation of the Equitable Distribution Claim) in the State Court. With the assistance of the State Court-appointed Special Referee, and the consent of the chapter 7 trustee appointed herein (the "Trustee"), the parties executed a "So Ordered Term Sheet" (the "Term Sheet") that was incorporated, but not merged, into the Judgement of Divorce entered by the State Court. Briefly, in the Term Sheet, the Debtor agreed to pay Jennifer $2,500,000, out of his post-petition funds and over the course of four years, for her share of the marital assets (the "Equitable Distribution Payment"). In exchange, the Debtor and his bankruptcy estate retained ownership of the marital assets, and Jennifer agreed to turn over marital assets in her possession to the Trustee. To date, she has been paid $500,000, in accordance with the Term Sheet.

---

[1] On the Debtor's claims docket, the Equitable Distribution Claim is designated as "Claim No. 6."

1

On or about November 26, 2019, the Debtor, with the Trustee's support, filed a Motion to Approve Title to and Distribution of Marital Property Pursuant to Term Sheet in Matrimonial Action and Expunge Claim No. 6 of Jennifer Brown Pursuant to 11 U.S.C. § 502(a) and Fed. R. Bankr. P. 3007 [ECF 85] (the "Motion to Expunge Claim") in this chapter 7 case. After hearing argument on that motion, the Court issued its Memorandum Decision on Debtor's Motion to Approve Title to and Distribution of Marital Property Pursuant to Term Sheet in Matrimonial Action and Expunge Claim No. 6 of Jennifer Brown Pursuant to 11 U.S.C. § 502(a) and Fed. R. Bankr. P. 3007. *See In re Brown*, No. 18-10617, 2020 WL 1237935 (Bankr. S.D.N.Y. March 13, 2020) (the "Opinion"). As relevant, and in substance, in the Opinion, the Court held that in the Matrimonial Action, Jennifer liquidated and fixed the Equitable Distribution Claim at $2,500,000, agreed to accept the Equitable Distribution Payment from the Debtor in satisfaction of that claim, and was barred from obtaining additional recoveries on account of the Equitable Distribution Claim in this case. Thereafter, the Court entered an order expunging the claim (the "Claim Order").[2] The matter before the Court is Jennifer's motion for a stay of the Claim Order pending her appeal of that order (the "Stay Motion").[3] The Debtor objects to the Stay Motion.[4] Jennifer filed a reply to the objection and in support of the Stay Motion (the "Reply").[5] For the reasons set forth herein, the Court denies the Stay Motion.

---

[2]  *See* Order Regarding Debtor's Motion to Approve Title to and Distribute Marital Property Pursuant to Term Sheet in Matrimonial Action and Expunge Claim No. 6 of Jennifer Brown Pursuant to 11 U.S.C. § 502(a) and Fed. R. Bankr. P. 3007 [ECF No. 120].

[3]  *See* Motion For Stay of Order Expunging Claim Pending Appeal Pursuant to Fed. R. Bankr. P. 8007 [ECF No. 135].

[4]  *See* Debtor's Objection to Jennifer Brown's Motion for Stay of Order Expunging Claim Pending Appeal Pursuant to Fed. R. Bankr. P. 8007 [ECF No. 137].

[5]  *See* Jennifer Brown's Reply in Motion for Stay of Order Expunging Claim No. 6 Pending Appeal Pursuant to Fed. R. Bankr. P. 8007 [ECF No. 138].

Background

On March 26, 2013, Jennifer commenced the Matrimonial Action in the State Court against the Debtor. Opinion at *2. The State Court appointed the firm of Bollam Sheedy Torani & Co., LLP CPA ("BST") to serve as an independent expert in the case. In part, BST's mandate was to trace the source, use and application of marital funds acquired and spent by the Debtor. *Id.* The BST Report identified the Unaccounted for Marital Assets. *Id.* After BST produced its report, Jennifer retained Financial Research Associates ("FRA"), to serve as her own expert and to review the findings set forth in the BST Report. FRA produced a report (the "FRA Report") that essentially confirmed BST's findings. *Id.* The Debtor commenced this case on March 5, 2018 (the "Petition Date"). The Matrimonial Action was automatically stayed upon the commencement of this case. Among the open issues in the Matrimonial Action as of the Petition Date, was the extent of Jennifer's share of the marital assets. Jennifer timely filed her Equitable Distribution Claim, which she based on the information contained in the BST and FRA Reports. *Id.* at *4.

On March 12, 2018, Jennifer filed a motion seeking, alternatively, to dismiss the case or to obtain stay relief to permit her to proceed with the Matrimonial Action. *Id.* at *2. On April 4, 2018, the Court entered an order denying Jennifer's request to dismiss the case, but granting stay relief to permit the Matrimonial Action to proceed in all respects. *Id.* at *4. The Court held that litigation in the Matrimonial Action could proceed in all respects including a determination of (i) the nature and extent of the Debtor's and Jennifer's marital property, (ii) the nature and extent of Jennifer's interest in such property, and (iii) the equitable distribution of such property. However, the Court directed that any determination regarding the distribution of property of the bankruptcy estate and any determination of title to assets of the bankruptcy estate, whether for

3

collection of support, equitable distribution or otherwise, would be subject to the Court's review and approval. Opinion at *4.

In February of 2019, the State Court directed that a Special Referee be appointed in the Matrimonial Action to conduct a hearing or trial in order to hear and report on all of the open financial issues in this matrimonial action. The open financial issues included the liquidation of the Equitable Distribution Claim. *Id*. The Special Referee conducted pre-trial conferences on April 15, 2019 and June 26, 2019 and scheduled twenty-two days of trial commencing on July 18, 2019. *Id.* The Special Referee commenced the trial on July 18, 2019. *Id*. After four days of trial and upon conclusion of the trial testimony on July 29, 2019, the Debtor and Jennifer, through their respective counsel, reached a settlement of the Matrimonial Action, including all open financial issues between the parties. *Id.* at *5. That agreement was embodied in the Term Sheet. *Id.* at *1. At a hearing on July 30, 2019, the Special Referee marked the Term Sheet as an exhibit to the record of the hearing and thereafter separately questioned Jennifer and the Debtor to determine whether each of them wished for the Term Sheet to be the agreement that resolves the financial issues in the divorce action. *Id.* at *6. At the conclusion of Jennifer and the Debtor's allocutions, the Special Referee accepted the Term Sheet as the basis for the parties' judgment of divorce. *Id.*

The Debtor and Jennifer each submitted Proposed Judgments of Divorce. In part, and in substance, the Debtor's proposed judgment provided that in accordance with the Term Sheet, the Debtor shall pay to Jennifer a total amount of $2,500,000 as her share of equitable distribution. *Id*. Jennifer objected to the entry of the Debtor's Proposed Judgment of Divorce. Among other things, she contended that (i) in negotiating the Term Sheet she did not agree to withdraw the Equitable Distribution Claim, and (ii) she agreed to accept $2,500,000 in payments from the

4

Debtor as possibly a credit against the Equitable Distribution Claim, but not in satisfaction of that claim. *Id*. In another filing, she advised the State Court that:

> [W]hen the Trustee establishes that the Defendant has hidden $12,000,000.00, the Term Sheet will be vacated on the basis of Defendant's fraud. At such time, my rights to equitable distribution, as recognized by Judge Garrity, will be recognized and subject to enforcement. Clearly, the Defendant mistakenly believed that he had escaped the microscope that the U.S. Trustee will now put him under to explain where the missing funds are, as reported by BST.

Opinion at *7.

On November 8, 2019, the State Court entered the Judgment of Divorce. *Id.* at *8. In so ruling, the State Court did not adopt Jennifer's distinction between her right to an equitable distribution of the marital assets and her contingent claim to those assets embodied in the Equitable Distribution Claim, and it did not modify, in any way, the Debtor's Proposed Judgment of Divorce. *Id.*

> In part, the Judgment of Divorce orders that pursuant to the "Term Sheet, [the Debtor] shall pay to [Jennifer] or on behalf of [Jennifer] a total amount of $2,500,000 as her share of equitable distribution." Judgment of Divorce at 6. It also provides that the Term Sheet "shall be incorporated herein by reference, [and] shall survive and shall not be merged into [Judgment of Divorce.]" *Id.* at 9.

*Id.* Thereafter, the Debtor filed the Motion to Expunge Claim. As relevant, in that motion, the Debtor sought to expunge the Equitable Distribution Claim pursuant to § 502(a) of the Bankruptcy Code and Bankruptcy Rule 3007(a) on the grounds that (i) the Judgment of Divorce directs that the Debtor pay Jennifer $2,500,000 as her share of equitable distribution, (ii) nothing in that judgment affords Jennifer any further right to equitable distribution, and (iii) the Debtor, not his estate, is obligated to pay Jennifer her share of equitable distribution. The Trustee supported the Motion to Expunge Claim. *Id.* at *8. Jennifer opposed it.

Under § 502(b), if a party in interest objects to a claim, the court:

5

>   [A]fter notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
>
>   > (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]

11 U.S.C. § 502(b)(1). The Court sustained the objection to the Equitable Distribution Claim. Briefly, in doing so, the Court first reviewed New York State law governing the Matrimonial Action. The Court considered that Jennifer sought a divorce pursuant to § 170(7) of the New York Domestic Relations Law (the "DRL"). That section states that an action for divorce may be maintained by a husband or wife to procure a judgment divorcing the parties and dissolving the marriage on the grounds that:

>   The relationship between husband and wife has broken down irretrievably for a period of at least six months, provided that one party has so stated under oath. No judgment of divorce shall be granted under this subdivision unless and until the economic issues of equitable distribution of marital property, the payment or waiver of spousal support, the payment of child support, the payment of counsel and experts' fees and expenses as well as the custody and visitation with the infant children of the marriage have been resolved by the parties, or determined by the court and incorporated into the judgment of divorce.

DRL § 170(7). The Court found that under the plain language of the statute, a court cannot grant a judgment of divorce under § 170(7) unless it determines that the relationship between husband and wife has broken down irretrievably for a period of at least six months, and the economic issue of the equitable distribution of marital property, among others, is determined by the court and incorporated into the judgment of divorce. Opinion at *10. The Court found that the Judgment of Divorce met those standards, and specifically that the State Court determined

>   (i) that there were grounds for dissolving the marriage between Jennifer and the Debtor because their relationship has broken down irretrievably for a period of at least six months; and
>
>   (ii) the Parties settled the financial and custody issues by the So-Ordered Term Sheet dated July 30, 2019, and that in accordance with Paragraph 2 on pages 1

through 2 of the Term Sheet, the Debtor shall pay to Jennifer or on behalf of Jennifer a total amount of $2,500,000 as her share of equitable distribution.

*See id*. The Court then considered application of the doctrine of res judicata to the Judgment of Divorce, and specifically whether it barred Jennifer from litigating the Equitable Distribution Claim in this Court. In part, the Court held:

> The nature and extent of Jennifer's share in the marital assets was an issue before the State Court in the Matrimonial Action. In the Term Sheet, Jennifer accepted the Equitable Distribution Payment as her share of equitable distribution. The Term Sheet is incorporated into the Judgement of Divorce, and the State Court had jurisdiction to issue the judgment. The Judgment of Divorce is a final judgment on the merits that resolves all matters that were or could have been raised in the Matrimonial Action, including all those related to equitable distribution of the marital assets. Jennifer relied on the BST Report and FRA Report in pursuing her equitable distribution claim in the Matrimonial Action. All matters relating to the equitable distribution of the marital property, including Jennifer's right to a share of the Unaccounted For Marital Property, necessarily were resolved in the Judgement of Divorce. *See Boronow v. Boronow,* 71 N.Y.2d 284, 290, 525 N.Y.S.2d 179, 183 (1983) ("In a matrimonial action, where the essential objective is to dissolve the marriage relationship, questions pertaining to important ancillary issues like title to marital property are certainly intertwined and constitute issues which generally can be fairly and efficiency resolved with the core issue. The courts and the parties should ordinarily be able to plan for the resolution of all issues relating to the marriage relationship in the single action."). *See also Harrison v. Harrison,* 134 A.D.2d 567, 568, 521 N.Y.S.2d 466, 468 (2d Dep't 1987) ("Inasmuch as the matrimonial action was the appropriate forum within which to properly adjudicate the marital property and financial issues that are raised herein, the parties had the right to expect that any matters of that sort not considered in the matrimonial action would not be litigated elsewhere.") Jennifer incorporated the BST Report and FRA Report in her Equitable Distribution Claim. In substance, in that claim she is asserting the same claim against the Debtor that she settled in the Matrimonial Action. She is barred from doing so by application of the principle of res judicata.

*Id.* at \*12. Based on those findings, the Court held that the Debtor rebutted the presumption of the prima facie validity of the Equitable Distribution Claim and demonstrated that Jennifer is entitled to no more than the Equitable Distribution Payment in full satisfaction of her Equitable Distribution Claim. Accordingly, the Court found that the Debtor demonstrated grounds for

7

expunging the claim. *Id.*[6] In reaching this conclusion, the Court considered and rejected all of Jennifer's arguments to the contrary. *See* Opinion at *12-16.

Analysis

Jennifer identifies the following issues to be presented on appeal:

1. Whether the Bankruptcy Court erred in finding that a settlement term sheet that was incorporated into, but not merged with, a judgment of divorce bars reopening of the settlement and judgment on discovering that the settlement and judgment were procured through the Debtor's fraudulent concealment of pre-petition assets;

2. Whether the Bankruptcy Court erred in finding that a settlement term sheet that was incorporated into, but not merged with, a judgment of divorce bars reopening of the settlement and judgment based on the doctrine of res judicata when the question of whether the settlement was procured by fraud was not litigated and no findings of fact were made by any court in connection with the settlement;

3. Whether the Bankruptcy Court erred in expunging a contingent claim of the Debtor's ex-spouse that would have value only if the Debtor were found to have fraudulently concealed pre-petition assets that constituted marital property to which the claimant had a meritorious claim, despite the fact that a settlement incorporated into, but not merged with, a judgment of divorce provided that the claimant gave up the right to retain only certain specifically enumerated marital property, and the settlement contained no language sufficient under New York law to waive or release claims to any other marital property including fraudulently concealed assets[.]

*See* Statement of the Issues to Be Presented on Appeal [ECF No. 131].

---

[6] The Court held, as follows:

> Accordingly, the Debtor has demonstrated grounds for expunging the claim. *Travelers Cas. & Sur. Cor. Of America v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 127 S. Ct. 1199, 1204 (2007) (11 U.S.C. § 502(b)(1) "is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is available in bankruptcy."); *see also In re LightSquared Inc.*, 504 B.R. 321, 336 (Bankr. S.D.N.Y. 2013) (the "language could not be plainer – if a claimant would be estopped under non-bankruptcy law from having a valid claim against the debtor, a party may seek disallowance of the claim under section 502(b)(1)."); *In re Ernst,* 382 B.R. 194, 197 (S.D.N.Y. 2008) ("[T]here is nothing in [section 502] that requires a court to ignore that the claim is no longer valid under state law.").

Opinion at *12.

8

Bankruptcy Rule 8007 governs an application for a stay pending appeal from a decision of a bankruptcy court. As relevant, it states, in substance, that ordinarily, a party seeking a stay of a judgment, order, or decree of the bankruptcy court pending appeal must first move for such relief in the bankruptcy court. *See* Bankruptcy Rule 8007(a)(1)(A). The decision as to whether or not to grant a stay of an order pending appeal lies within the sound discretion of the court. *See, e.g.*, *In re Gen. Motors Corp.*, 409 B.R. 24, 30 (Bankr. S.D.N.Y. 2009); *New York Skyline, Inc. v. Empire State Building Co. L.L.C. (In re New York Skyline, Inc.)*, 520 B.R. 1, 5 (S.D.N.Y. 2014). In exercising this discretion, the Court will consider the following four factors: (1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interest that may be affected. *See ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 346 (S.D.N.Y. 2007) ("*Adelphia*") (footnote omitted) (citations and internal quotation omitted). *See also In re Sabine Oil & Gas Corp.*, 548 B.R. 674, 681 (Bankr. S.D.N.Y. 2016).

The burden on the movant seeking the extraordinary relief of a stay is a "heavy" one. *See In re Gen. Motors Corp.*, 409 B.R. at 30. Indeed, "[s]tays pending appeal are the exception, not the rule, and are granted only in limited circumstances." *In re Taub*, No. 08-44210, 2010 WL 3911360, at *2 (Bankr. E.D.N.Y. Oct. 1, 2010) (first citing *In re Paolo Gucci,* 105 F.3d 837, 840 (2d Cir. 1997); then citing *In re Aston Baker*, No. CV05-3487(CPS), 2005 WL 2105802, at *3 (E.D.N.Y. Aug. 31, 2005)). While some courts have held that, to prevail, the moving party must show "'satisfactory' evidence on all four criteria," (*see, e.g.*, *Turner v. Citizens Nat'l Bank (In re Turner)*, 207 B.R. 373, 375 (B.A.P. 2d Cir. 1997) (quoting *Bijan-Sara Corp. v. Fed. Deposit Ins.*

9

*Corp. (In re Bijan-Sara Corp.)*, 203 B.R. 358, 360 (B.A.P. 2d Cir. 1996))), other courts have held that the inquiry involves a balancing of the four factors and the lack of any one factor is not dispositive to the success of the motion. *See In re Gen. Motors Corp.*, 409 B.R. at 30; *Adelphia*, 361 B.R. at 347. The Court declines to determine whether Jennifer is required to satisfy all four factors of the four-part test in order to succeed on her Stay Motion. Instead, the Court will employ the balancing approach utilized in *General Motors* and in other cases. The Court finds that it would reach the same conclusion—that Debtor's Stay Motion must be denied—under both tests. The Court discusses each of the factors in turn below.

Irreparable Injury

A showing of probable irreparable injury is the "principal prerequisite" for the issuance of a stay pursuant to Bankruptcy Rule 8007, and such harm "must be 'neither remote nor speculative, but actual and imminent.'" *In re Sabine Oil & Gas Corp.*, 548 B.R. at 681 (citations omitted). "[T]he moving party must demonstrate that such injury is likely before the other requirements will be considered." *Fox v. Mandiri (In re Perry H. Koplik & Sons, Inc.)*, No. 02–B–40648, 2007 WL 781905, at *1 (Bankr. S.D.N.Y. Mar. 13, 2007) (citation omitted). *See also Adelphia*, 361 B.R. at 347 ("A showing of probable irreparable harm is the principal prerequisite for the issuance of a [Rule 8007] stay." (citation omitted)); *Stern v. Bambu Sales, Inc.*, 201 B.R. 44, 46 (E.D.N.Y. 1996) (denying stay pending appeal where movant failed to show irreparable harm). To establish irreparable harm, plaintiffs must demonstrate "an injury that is neither remote nor speculative, but actual and imminent." *Consolidated Brands, Inc. v. Mondi*, 638 F. Supp. 152, 155 (E.D.N.Y. 1986); *accord Kaplan v. Board of Educ. of the City School Dist.*, 759 F.2d 256, 259 (2d Cir. 1985); *Salant Acquisition Corp. v. Manhattan Indus.*, 682 F. Supp. 199, 202 (S.D.N.Y. 1988).

Jennifer contends that she will be irreparably harmed if the Court does not stay the Claim Order because she has a contingent claim to share in the Unaccounted for Marital Assets, should the Trustee discover such assets (*see* Reply ¶ 1; *see also id.* ¶ 4 (asserting that in staying the Claim Order, "the only thing being stayed is the expungement of a contingent claim to assets that have not yet been identified and located")), and there is a chance that while her appeal is pending, the Trustee will conclude the administration of the Debtor's case and make a final distribution to creditors.  *See* Stay Motion ¶ 15 ("If a stay is not granted and [Jennifer's] contingent claim is expunged, [Jennifer] faces the likelihood that any wrongfully concealed assets discovered by the Trustee will be distributed to other creditors and she will lose her only chance to assert her right to a proportionate share.").  Under § 704(a)(1) of the Bankruptcy Code, a trustee must "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest."  11 U.S.C. § 704(a)(1).  *See also In re Riverside–Linden Inv. Co.,* 85 B.R. 107, 111 (S.D. Cal. 1988) ("It is well recognized that the trustee's duties under § 704 are not co-equal. The duty to close the estate as quickly and expeditiously as is compatible with the best interests of the parties in interest has been called the trustee's 'main duty.'"), *aff'd* 99 B.R. 439 (B.A.P. 9th Cir. 1989).  As a general rule, chapter 7 trustees make no distributions to creditors until they have liquidated the estate assets and filed a final account.  *See In re Quid Me Broad., Inc.*, 181 B.R. 715, 717-20 (Bankr. W.D.N.Y. 1995) (agreeing that since the chapter 7 trustee is constrained under § 726(a) to make a pro-rata distribution to creditors holding similar claims "he must be afforded the luxury of waiting until case closing and final distribution to make certain that there are sufficient funds to cover all expenses of administration" and finding that the chapter 7 trustee was under no duty, absent a court order, to remit IRS administrative expense taxes before such

final administration of the estate); *see also In re GPLA, Inc.*, No. 2:16-bk-13416-RK, 2016 WL 4440376, at *1 (Bankr. C.D. Cal. Aug. 22, 2016) (observing that "distributions to creditors in a Chapter 7 bankruptcy case generally coincides with filing of trustee's final account, but the court has power to authorize interim distributions upon assurance of sufficient remaining funds to pay all administrative expense claims" (citations omitted)).  Section 350(a) of the Bankruptcy Code authorizes the closing of bankruptcy cases only "[a]fter an estate has been fully administered and the court has discharged the trustee[.]"  11 U.S.C. § 350(a).  At a minimum, the "full administration" of a chapter 7 proceeding requires a final report by the trustee indicating the distribution of proceeds from liquidated assets.  *See Matter of Wade*, 991 F.2d 402, 407 (7th Cir. 1993) ("Chapter 7 cases come to an end in a final report indicating the distribution of proceeds from liquidated assets."); *see also* LBR 5009-1(b) ("Unless the Court orders otherwise, in a chapter 7 asset case, the trustee must file and serve upon the United States Trustee, together with an affidavit of final distribution, a closing report . . .").  "A final report should be just that: a report evidencing facts from which the court can make a determination of finality based upon a finding that there are no administrative tasks remaining to be completed."  *In re Kliegl Bros. Universal Elec. Stage Lighting Co., Inc.*, 238 B.R. 531, 542 (Bankr. E.D.N.Y 1999).

Jennifer has submitted no evidence to substantiate her contention that there is a risk that the Trustee will fully administer the Debtor's case and make distributions to creditors before the district court can resolve the appeal.  Moreover, in arguing that the issuance of a stay of the Claim Order will not harm other parties, she takes the opposite position and contends that "the Trustee has only just begun to search for concealed assets and has initiated an adversary proceeding against the Debtor and related parties to recover such assets that is still in its infancy."  Stay Motion ¶ 15.  She has not met her burden of demonstrating that she will be

12

irreparably harmed if this Court does not stay the Claim Order pending her appeal of that order. *See In re Taub*, No. 08–44210, 2010 WL 3911360, at *4 (Bankr. E.D.N.Y. Oct. 1, 2010) (finding that the debtor had not established that the chapter 11 estate would suffer irreparable harm if retention orders of estate professionals are not stayed because the "substantial fees" by the trustee's retained professionals are speculative, subject to approval by the bankruptcy court, and the Debtor would have an opportunity to object at the time the professionals make their fee applications); *In re Milford Conn. Assocs., L.P.*, No. 04–30511(ASD), 2008 WL 2003118, at *1 (Bankr. D. Conn. May 7, 2008) (finding no irreparable harm to justify staying all bankruptcy proceedings, including United States Trustee's motion to convert or appoint a chapter 11 trustee during pendency of appeal of bankruptcy court's order denying confirmation because "any alleged injury after the hearing of [the United States Trustee's] Motion is purely speculative since no one knows, or could know, at this time what, if any, relief this Court may enter in connection with the Conversion/Trustee Motion."), *appeal denied*, Case No. 08-107, 2008 WL 2079126 (D. Conn. May 16, 2008); *Koper v. Koper* (*In re Koper*), 560 B.R. 68, 75 (Bankr. E.D.N.Y. 2016) (finding that the possibility that the implementation and enforcement of sanctions order and judgment on consent will impact attorney-defendant's license to practice is too speculative to show irreparable harm).

<u>Potential Harm to Other Parties</u>

To establish this factor, Jennifer must demonstrate that "the balance of harms tips in favor of granting the stay." *Adelphia*, 361 B.R. at 349 (citations omitted). She contends that the balance of equities tips decidedly in her favor because if the stay is not issued, she may lose her contingent claim to the assets described in the BST and FRA Reports that she asserts were fraudulently concealed by the Debtor from the State Court and this Court, while other creditors

stand to gain an undeserved windfall if she is prevented from having the merits of her contingent claim to a share of those assets determined by the appropriate court if and when such assets are located by the Trustee. Reply ¶ 7. However, as noted above, Jennifer has not demonstrated that there is any risk of harm to her if the Court does not stay the Claim Order. She has failed to establish that this factor weighs in favor of granting the extraordinary relief she is seeking herein.

Substantial Possibility of Success on Appeal

"The 'substantial possibility of success' test is considered an intermediate level between 'possible' and 'probable' and is 'intended to eliminate frivolous appeals.'" *In re Sabine Oil & Gas Corp.*, 548 B.R. at 683-84 (citing *In re 473 West End Realty Corp.*, 507 B.R. 496, 501 (Bankr. S.D.N.Y. 2014)). In support of her contention that she is likely to succeed on the merits of the appeal, Jennifer asserts that in seeking to expunge her contingent Equitable Distribution Claim, the Debtor argued that Jennifer had waived and released any right to marital assets, wrongly concealed or otherwise, by entering into the Term Sheet. *See* Stay Motion at ¶ 5. Jennifer says that she rejected that contention and argued that the Term Sheet contained no such waiver or release, and that if the Debtor were found to have misrepresented and concealed his assets in the Matrimonial Action or in this proceeding, she would have the right to reopen the Term Sheet and seek to modify or vacate the Judgment of Divorce based on the Debtor's fraud. *Id.* She asserts that in the Opinion, the Court adopted the Debtor's rationale, finding among other things that the Term Sheet and the Judgment of Divorce barred any such application by the doctrine of res judicata.

Jennifer makes two arguments in support of the Stay Motion. First, she says that the Court's decision is contrary to applicable law, and as support cites to *Van Wie v. Van Wie*, 124 A.D. 2d 353, 355, 507 N.Y.S.2d 486, 488 (N.Y. App. Div. 1986) ("*Van Wie*") and *Arizona v.*

14

*California*, 530 U.S. 392, 414 (2000). Stay Motion ¶ 7. Second, she says that it would be inequitable for her to be deprived of the right to a share of any assets wrongfully concealed by the Debtor that may be discovered by the Trustee because she relied on the Debtor's fraudulent disclosures in agreeing to settle the financial issues in the Matrimonial Action. *Id.* The Court finds no merit to either contention. There is no basis for the contention that she relied on the Debtor's fraudulent disclosures in agreeing to settle the financial issues in the Matrimonial Action. In support of the Stay Motion, Jennifer contends:

> [T]he question on appeal is not of any factual findings by the Court, but rather a question of law involving the construction of a settlement agreement and judgment of divorce, and Ms. Brown's Motion sets forth what she believes is a compelling legal argument for a construction that differs from that in the Order and Decision on appeal.

*See* Reply at ¶ 6. In the Opinion, the Court specifically rejected Jennifer's contention that she relied on the Debtor's alleged fraudulent disclosures in agreeing to settle the financial issues in the Matrimonial Action:

> There is no merit to Jennifer's contention that she relied on false information in agreeing to the Term Sheet. She was fully aware of the contents of the BST Report and retained her own expert that produced the FRA Report. In agreeing to the Term Sheet, she advised the Special Referee that (i) she had sufficient information about the Debtor's finances to be able to enter into the Term Sheet and (ii) she understood each part of the Term Sheet and believed the Term Sheet to embody a fair and reasonable settlement of the economic issues in the Matrimonial Action. July 30 H'rg Tr. 4:20-22; 5:6-9; 8:10-13. Jennifer could have tried the open economic issues to conclusion before the Special Referee. Upon advice of counsel, she elected to settle those matters on the terms set forth in the Term Sheet. Any doubt that Jennifer was uncertain of the path she was taking in agreeing to the Term Sheet is dispelled by her allocution to the Special Referee, also with the guidance of her counsel.

Opinion at *15. To that end, the Court found that with the assistance of her counsel, Jennifer allocuted to the facts that (i) she read the entire Term Sheet, (ii) initialed each page, (iii) reviewed the Term Sheet with her attorney before executing it, (iv) believed that she had

15

sufficient information about the Debtor's finances to be able to enter into the Term Sheet, and (v) understood each part of the Term Sheet and believed the Term Sheet to embody a fair and reasonable settlement of the economic issues in the Matrimonial Action. *Id.* at * 6. Jennifer does not challenge any of the Court's factual findings in the Opinion and, as such, it is not plausible that on appeal she can demonstrate that she relied on the Debtor's fraudulent disclosures in agreeing to settle the financial issues in the Matrimonial Action. Moreover, in the Opinion, the Court found that although Jennifer contested the form of the Judgment of Divorce submitted by the Debtor to the State Court, and specifically argued in her Affidavit In Support of Counter Judgment of Divorce that "[s]imply put, on July 30, 2019, I resolved financial issues against Mr. Brown in the matrimonial matter, except I did not and never intended to resolve my claims against the bankruptcy estate nor my rights to assert and enforce my equitable distribution rights in bankruptcy court or subsequently in this court" (*id.* at *7), and submitted her own form of Judgment:

> Jennifer did not appeal or otherwise challenge the entry of the Judgment of Divorce. To the contrary, Jennifer has embraced the Judgement as there is no dispute that she has accepted payments under the Judgement from the Debtor totaling $500,000. In that way, Jennifer has ratified the agreement in the Term Sheet that is incorporated in the Judgment of Divorce. *See Phillips S. Beach LLC v. ZC Specialty Ins. Co.*, 867 N.Y.S. 2d 386, 387 (N.Y. Sup. Ct. 2008) (A ratification occurs when a party accepts the benefits of a contract and fails to act promptly to repudiate it.); *see also Panaggio v. Panaggio,* 684 N.Y.S. 2d 732, 733 (N.Y. App. Div. 1998) (Wife could not obtain rescission of separation agreement on grounds of fraud and duress because wife was represented by counsel during protracted settlement negotiations and agreed to stipulation in open court, and wife ratified agreement by continuing to accept benefits under the agreement for years).

Opinion at * 13. Jennifer does not challenge that determination on appeal.

Jennifer cites *Van Wie*, 507 N.Y.S.2d 486 as support for the proposition that the Term Sheet, which is incorporated, but not merged, into the Judgment of Divorce survives the judgment and the judgment does not bar a subsequent challenge to the validity of the Term Sheet

16

based on fraud. *See* Stay Motion ¶¶ 6, 19. In that case, the plaintiff (wife) and defendant (husband) were married in 1966. In June 1984, they entered into a separation agreement which provided, among other things, that plaintiff had no claim to the marital residence – which apparently was the primary asset of the marriage – and that she waived any right to maintenance. 507 N.Y.S. 2d at 487. Plaintiff was granted a judgment of divorce against defendant in September 1984, and the June 1984 separation agreement was incorporated, but not merged, into the divorce decree. *Id.* In March 1985, plaintiff sued to have certain provisions of the separation agreement declared void and to impose a constructive trust on the marital residence. Plaintiff contended that the terms of the separation agreement were procured by defendant's fraud, duress and misrepresentation. *Id.* at 487-88. Defendant moved to dismiss the action on the grounds of documentary evidence, res judicata and failure to state a cause of action. *Id.* at 488. Special Term credited the res judicata defense and dismissed the complaint. On appeal, the Appellate Term reversed. *Id.* It found that a separation agreement which is incorporated, but not merged, into a divorce decree survives the decree and the decree does not bar a subsequent challenge to the validity of the separation agreement based on fraud. *Id.* It reasoned that the doctrine of res judicata did not bar the lawsuit because the merits of plaintiff's contention that the separation agreement was procured through fraud had not been previously litigated. *Id.* This case is different from *Van Wie*. Here, before the State Court approved the Term Sheet and issued the Judgment of Divorce, Jennifer, with the advice of counsel, allocuted to the provisions of the Term Sheet and confirmed to the Special Referee, among other things, that (i) she had sufficient information about the Debtor's finances to be able to enter into the Term Sheet and (ii) she understood each part of the Term Sheet and believed the Term Sheet to embody a fair and reasonable settlement of the economic issues in the Matrimonial Action. Opinion at *15. The

Debtor's alleged fraud in concealing marital assets was among the economic issues to be resolved in the Matrimonial Action. Jennifer agreed to accept the Equitable Distribution Payment in satisfaction of the Equitable Distribution Claim at a time that she was plainly aware of the Debtor's alleged fraud as set forth in the BST Report, her own FRA Report and her Equitable Distribution Claim. Moreover in entering the Judgment of Divorce, the State Court rejected Jennifer's assertion that while she "resolved financial issues against [the Debtor] in the matrimonial matter," she "did not and never intended to resolve [her] claims against the bankruptcy estate nor [her] rights to assert and enforce [her] equitable distribution rights in bankruptcy court or subsequently in [State Court]." Opinion at *7. *Van Wie* is distinguishable and inapplicable in this case. In citing *Arizona v. California*, 530 U.S. 392 (2000) in support of her Stay Motion, Jennifer is rehashing an argument she made in opposition to the Motion to Expunge Claim. The Court found no merit to Jennifer's reliance on *Arizona* and distinguished that case, and others that she cited, on the facts of those cases. *See* Opinion at *15.

The case law is clear that the probability of success that must be demonstrated in applying this factor is inversely proportional to the amount of irreparable injury that the plaintiff will suffer absent the stay; in other words, "more of one excuses less of the other." *In re Sabine Oil & Gas Corp.*, 548 B.R. at 684 (quoting *473 West End Realty Corp.*, 507 B.R. at 502). Jennifer failed to demonstrate that there is any likelihood that she will be irreparably injured if the Court does not stay the Claim Order. She has also failed to establish, in that light, that there is a substantial likelihood that she will prevail in her appeal of the Claim Order.

<u>Public Interest</u>

The public interest favors compliance with court orders and timely resolution of litigation. *See, e.g.*, *In re Swartout*, 554 B.R. 474, 480 (Bankr. E.D. Cal. 2016) ("In short, the

18

public interest favors compliance - not disobedience - with court orders." (citing *U.S. v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1371 (9th Cir. 1980))); *Borowski v. BNC Mortg., Inc.*, No. C12-5867, 2013 WL 5770378, at *4 (W.D. Wash. Oct. 24, 2013) ("Finally, there is a strong public interest in favor of timely compliance with orders of the court. There is also a public interest in resolution of litigation."); *Chevron Corp. v. Donziger*, Case No. 12-mc-80237, 2013 WL 5718532, at *2 (N.D. Cal. Oct. 21, 2013) ("Further, there is a strong public interest in favor of timely compliance with orders of the court."). Jennifer says that the public interest will be served by the Court's issuance of a stay pending appeal because the public interest in "expedient administration of bankruptcy proceedings" is outweighed by the right of parties to appellate review. Stay Motion ¶ 20. She contends that the public interest is served ensuring that debtors make "truthful" statements about their financial condition. *Id.* ¶ 21. All that may be true, but Jennifer has not demonstrated that the public interest will be undermined if the Court does not stay the Claim Order. She has failed to demonstrate that there is any likelihood that her appeal will be mooted if the stay is not granted.

## Conclusion

Based on the foregoing, the Court finds that Jennifer has not met her heavy burden of establishing grounds for the Court to stay the Claim Order pending her appeal of that order. Accordingly, the Court denies the Stay Motion.

IT IS SO ORDERED.

Date:  June 10, 2020
       New York, New York

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
United States Bankruptcy Judge