UNITED STATES BANKRUPTCY COURT                    NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
                                                         :
*In re:*                                                 :        Chapter 7
                                                         :
Michael Rodger Brown,                                    :        Case No. 18-10617 (JLG)
                                                         :
                                                         :
                                      Debtor.[1]         :
-------------------------------------------------------- x


**MEMORANDUM DECISION AND ORDER SUSTAINING CHAPTER 7 TRUSTEE'S
OBJECTION TO CLAIM OF HOWARD BROWN**


<u>**A P P E A R A N C E S**</u> **:**

AKERMAN LLP
*Attorneys for John S. Pereira, as Chapter 7 Trustee*
*for the Estate of Michael Rodger Brown*
1251 Avenue of the Americas, 37th Floor
New York, New York 10020
<u>By:</u>    John P. Campo
        Darryl R. Graham

COLE SCHOTZ P.C.
*Attorneys for Howard Brown*
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
<u>By:</u>    Steven L. Klepper
        David S. Gold
        Jacob S. Frumkin

---

[1]    The last four digits of Michael Rodger Brown's social security number are 0720.  The location of Michael Rodger Brown's service address for purposes of this Chapter 7 Case is: 778 Park Avenue, New York, NY 10021.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## Introduction[2]

Michael Roger Brown ("Michael" or the "Debtor") is a chapter 7 debtor herein. On August 6, 2018, Howard Brown ("Howard"), the Debtor's father, filed an unsecured claim against the Debtor in the sum of $2,801,410.04, which he subsequently voluntarily reduced to the sum of $2,726,252.61 (the "Claim"). John S. Pereira, as the chapter 7 trustee (the "Trustee") for the Debtor's estate, filed an objection (the "Objection")[3] to the Claim. He seeks to disallow, expunge, and/or subordinate the Claim pursuant to sections 502(b), 502(d), and 510(c) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 3003 and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Howard filed a response (the "Response")[4] to the Objection, including a declaration (the "Declaration" or "Decl.")[5] in support of the Response. Howard denies that the Court should disallow and expunge his Claim and asserts that the Court should allow the Claim in full. The Trustee filed a reply (the "Reply")[6] to the Response and in support of the Objection. The Court conducted a hearing on the Objection.

---

[2]    Capitalized terms have the meanings ascribed to them herein. References herein to "ECF No. __" are to documents filed on the electronic docket in this Chapter 7 Case, No. 18-10617. References to "AP ECF No. __" are to documents filed on the electronic docket in the Adversary Proceeding, *Pereira v. Michael Roger Brown*, No. 20-01057.

[3]    *Chapter 7 Trustee's Objection to Claim of Howard Brown Pursuant to Section 502(b) of the Bankruptcy Code and Bankruptcy Rules 3003 and 3007*, ECF No. 181.

[4]    *Howard Brown's (I) Response to Chapter 7 Trustee's Objection to Claim of Howard Brown Pursuant to Section 502(b) of the Bankruptcy Code and Bankruptcy Rules 3003 and 3007 and (II) Request for Allowance of Claim*, ECF No. 208.

[5]    *Declaration of Howard Brown in Support of his (I) Response to Chapter 7 Trustee's Objection to Claim of Howard Brown Pursuant to Section 502(b) of the Bankruptcy Code and Bankruptcy Rules 3003 and 3007 and (II) Request for Allowance of Claim*, ECF No. 208.

[6]    *Trustee's Reply in Support of Objection to Claim of Howard Brown and in Opposition to Allowance of Claim*, ECF No. 213.

For the reasons discussed below, the Claim is not prima facie valid, and Howard has not met his burden of proving the validity and enforceability of the Claim, by a preponderance of the evidence. Accordingly, the Court sustains the Objection pursuant to section 502(b) of the Bankruptcy Code and disallows and expunges the Claim. Section 502(d) will not be triggered unless and until the Trustee obtains a judgment against Howard on one or more of the fraudulent conveyance counts in the Adversary Proceeding. Accordingly, the Court denies the Trustee's request to disallow the Claim under section 502(d), without prejudice, and pending the resolution of the Adversary Proceeding. To the extent the Claim is allowed in any amount in the interim, it will remain a disputed claim until such time that the Adversary Proceeding is finally resolved. The Court denies the Trustee's request pursuant to section 510(c) of the Bankruptcy Code to subordinate the Claim, without prejudice to his right to seek such relief pursuant to an adversary proceeding, should the Claim be allowed under section 502 of the Bankruptcy Code.

### Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Background

On or about March 26, 2013, the Debtor's then-wife, Jennifer Brown ("Jennifer") commenced a divorce action (the "Matrimonial Action") in the Supreme Court of the State of New York, County of New York, Matrimonial Term.

In September 2013, Michael and Howard, as co-borrowers, entered into that certain Business Loan Agreement and Note with ConnectOne Bank ("ConnectOne") and obtained a

$1.0 million Line of Credit from ConnectOne (with the Business Loan Agreement and Note, the "ConnectOne Loan"). *See* Decl. ¶ 4; *see also* Decl., Ex. 1 (Note and Business Loan Agreement); Decl., Ex. 2 (Commercial Lines of Credit Agreements). Howard pledged his residence as collateral for the ConnectOne Loan. During the period of July 2014 through July 2017, at Michael and Howard's requests, ConnectOne increased the Line of Credit three times.[7] As of July 18, 2017, CreditOne renewed the then-existing $2.0 million Line of Credit pursuant to that certain Commercial Line of Credit Agreement and Note dated July 18, 2017. *See id.*

Between April 27, 2017, and March 27, 2018, Howard issued nine checks aggregating $193,000 (the "Checks") from his joint bank account with his wife, Nancy D. Brown. Each is payable either to Susan Bender, the law firm of Bender Rosenthal LLP (together with Susan Bender, the "Law Firm"), Jennifer, or the Debtor. The "memo" line on each Check is redacted or blank. Decl., Ex. 4 (Checks).

On March 5, 2018, the Debtor filed a voluntary petition (the "Petition") commencing a case (the "Chapter 7 Case") under chapter 7 of the Bankruptcy Code in this Court.[8] That day, the Trustee was appointed as the chapter 7 trustee for the Debtor's estate; he continues to serve in that role. In support of his Petition, the Debtor filed his schedules of assets and liabilities (the "Schedules"). As relevant, Debtor's "Schedule E/F: Creditors Who Have Unsecured Claims" lists nonpriority unsecured claims, including:

> Schedule E/F (Item 4.5): $2,000,000.00 as due and owing to ConnectOne (the "ConnectOne Claim"). The claim is not listed as contingent, unliquidated, or

---

[7]    On July 18, 2014, CreditOne increased the credit limit to the ConnectOne Loan from $1.0 million to $1.5 million pursuant to that certain Commercial Line of Credit Agreement and Note dated July 18, 2014. *See* Decl., Ex. 2. On July 18, 2015, CreditOne increased the credit limit to the ConnectOne Loan from $1.5 million to $1.75 million pursuant to that certain Commercial Line of Credit Agreement and Note dated July 18, 2015. *See id.* On January 14, 2016, CreditOne increased the credit limit to the ConnectOne Loan from $1.75 million to $2.0 million pursuant to that certain Commercial Line of Credit Agreement and Note dated January 14, 2016. *See id.*

[8]    *Voluntary Petition for Individuals Filing for Bankruptcy*, ECF No. 1.

disputed.  The Debtor asserts that he incurred the debt underlying the ConnectOne Claim on September 9, 2013, and that the basis of the claim is a "commercial line of credit cosigned by my father."

Schedule E/F (Item 4.7): $500,000.00 as due and owing to "Howard and Nancy Brown."  The claim is not listed as contingent, unliquidated, or disputed.  The Debtor asserts that he incurred the debt underlying the claim on June 1, 2015.  He does not identify an agreement or other document evidencing the debt.  He states that the basis of the claim is that Howard and Nancy Brown "pay[] interest on commercial loan and lend[] money for lawyers and expenses."

Additionally, the Debtor's "Schedule H: Your CoDebtors" identifies Howard as his codebtor with respect to the ConnectOne Claim listed at Schedule E/F (Item 4.5).  Schedule H (Item 3.1).

On May 4, 2018, the Court established August 6, 2018, as the last day for creditors to file proofs of claim in the Chapter 7 Case.[9]  On May 29, 2018, ConnectOne filed a claim against the Debtor in the sum of $2,000,000.00 arising in connection with the ConnectOne Loan.  *See* Claim No. 2-1 (the "ConnectOne Claim").  In support of the claim, ConnectOne attached the Commercial Line of Credit Renewal Agreement and Note dated July 18, 2017, which Michael and Howard signed as co-borrowers.

On June 12, 2018, ConnectOne sent a letter to Howard, addressing him as a "co-borrower" with respect to the ConnectOne Loan.  *See* Decl., Ex. 6 (June 12 Letter).[10]  On June 22, 2018,

---

[9]    *Notice of Possible Payment of Dividends and of Last Date to File Claims*, ECF No. 25.

[10]    In part, the letter states as follows:

This notice is being sent to you in connection with the Commercial Line of Credit . . . in the amount of $2,000,000[.]00 that we have made to you and Michael Brown as co-borrowers (the "Loan").

Michael Brown has filed for bankruptcy in the Southern District of New York under Case No[.] 18-10617-JLG[.]  ConnectOne Bank is incurring legal costs and fees in connection with the bankruptcy action[.]  Pursuant to the applicable loan documents, ConnectOne Bank hereby notifies you as the non-debtor co-borrower of the Loan of our intent to demand, at the conclusion of the bankruptcy action, full reimbursement from you of all legal fees, costs and expenses incurred by ConnectOne Bank.  This notice is not intended and shall not be construed to constitute an attempt to collect a debt from Michael Brown.

Decl., Ex. 6.

ConnectOne sent Howard a payoff letter with respect to the Line of Credit, again addressing him as a "co-borrower." Decl., Ex. 7 (Payoff Letter). On June 27, 2018, Howard, as co-borrower, paid off the then-existing balance of the Line of Credit, $2,003,305.56. *Id.* ¶ 5.

On July 3, 2018, ConnectOne withdrew the ConnectOne Claim.[11] On August 6, 2018, Howard filed the Claim, in the sum of $2,801,410.04, on the basis of "Money loaned." Claim No. 7-1, Part 2, Item 8. The Claim does not include interest or other charges; however, Howard purported to "reserve[] the right to include interest at a later time." *Id.*, Part 2, Item 7. Howard did not attach a narrative or any documentation in support of the Claim.

On March 5, 2020, the Trustee filed a complaint (the "Complaint")[12] commencing an adversary proceeding (the "Adversary Proceeding") against Howard, the Debtor, and others. Through the Adversary Proceeding, the Trustee seeks "an accounting and to recover pre- and post-petition transfers of assets of the Debtor's estate." Complaint ¶ 1. The Trustee asserts that the causes of action result from, among other things, "the Debtor's efforts, together with his family members and related entities, to transfer assets of the estate in an effort to hide and keep those assets out of the Debtor's estate and out of the reach of creditors, including the Debtor's ex-wife." *Id.* The Trustee seeks to avoid these transfers as (i) Actual Fraudulent Transfers pursuant to sections 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code (Count I), *id.* ¶¶ 58–61; (ii) Constructively Fraudulent Transfers pursuant to sections 548(a)(1)(B), 550(a), and 551 (Count II), *id.* ¶¶ 62–69; and (iii) Post-Petition Transfers pursuant to sections 549(b), 550(a), and 551 (Count VII), *id.* ¶¶ 90–94. The Trustee also seeks to avoid, preserve, and recover transfers under New York state law pursuant to sections 273, 274, 275, and 276 of the New York Debtor &

---

[11]    *See Notice of Withdrawal of Proof of Claim of ConnectOne Bank*, ECF No. 30.

[12]    Adversary Complaint, AP ECF No. 1.

Creditor Law, made applicable in this Chapter 7 Case pursuant to sections 544(b), 550(a), and 551 of the Bankruptcy Code (Counts III–VI).  *Id.* ¶¶ 70–89.  Finally, in the Complaint, the Trustee asserts a cause of action for conversion and seeks an accounting and turnover of assets (Counts VIII–X). *Id.* ¶¶ 95–109.  The Trustee names Howard as a defendant in each of the Counts, with the exception of Count IX.  The Adversary Proceeding is pending.

### **The Claim Objection**

The Trustee seeks entry of an order disallowing and expunging the Claim pursuant to section 502(b)(1) and, alternatively, disallowing the Claim under section 502(d) of the Bankruptcy Code.  Objection ¶¶ 9–10.  As a further alternative, he seeks to subordinate the Claim pursuant to section 510(c).  *Id.* ¶ 11.

The Trustee maintains that the Court should expunge the Claim pursuant to section 502(b)(1) because it is unenforceable against the Debtor.  *Id.* ¶ 9.  He says that is so because, in violation of Bankruptcy Rule 3001(c), the Claim fails to include documentation in support of the Claim and, as such, fails to provide sufficient information to demonstrate that Howard actually advanced any funds to the Debtor and that the Debtor agreed to repay any such funds.  *Id.*  He also maintains that the lack of any writing evidencing the existence of a loan obligation or an agreement to repay, coupled with the size of the alleged loan (approximately $2.72 million) and the familial relationship between the Debtor and Howard, indicate that the amounts paid by Howard to or on behalf of the Debtor were gifts, not loans.  *Id.*

Alternatively, the Trustee asserts that the Court should disallow the Claim under section 502(d) of the Bankruptcy Code because, in the Adversary Proceeding, Howard is either a party from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy

Code, or he is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code.  *Id.* ¶ 10.

As a final alternative, the Trustee seeks to subordinate the Claim to all other unsecured claims, pursuant to section 510(c) of the Bankruptcy Code.  He contends that subordination of the Claim would be consistent with bankruptcy law because Howard is an insider and has engaged in inequitable conduct resulting in injury to competing claimants or an unfair advantage to the Claim. *Id.* ¶ 11.

## The Response

In his Response to the Objection, Howard voluntarily reduced the Claim to the sum of approximately $2.72 million[13] and submitted documents in support of the Claim.  Decl. ¶ 12; Decl., Exs. 1–8.  He contends that the Court should overrule the Objection and allow the Claim, as revised, in full.  As support, he contends that:

(a)  The failure to attach documentation in support of the Claim does not provide a basis for disallowing the Claim.  Response ¶¶ 21–22.

(b)  The Claim is prima facie valid because it correlates to the Schedules.  *Id.* ¶ 21. In any event, the documents annexed to the Response support the Claim.  *Id.* ¶ 23.

(c)  The familial relationship between the Debtor and Howard does not indicate per se that the Loans were "gifts" from Howard to the Debtor and thus does not support the Trustee's contention that the Claim should be disallowed under section 502(b). *Id.* ¶¶ 24–25.

(d)  The Court cannot disallow the Claim under section 502(d) because there has been no determination of Howard's liability in the Adversary Proceeding. *Id.* ¶¶ 26–27.

---

[13]    Howard contends that, based on the documentation annexed to the Declaration, the Debtor owes him not less than $2,726,252.61.  Decl. ¶ 12.  He explains that he is reducing the Claim, as filed, by the sum of $75,157.43, because he cannot find the documentation necessary to support those charges.  *Id.*  In addition, Howard conceded that the $5,000 check dated March 27, 2018, is a post-petition transfer that is not properly included in the Claim.  *Transcript Regarding Hearing Held on 1/24/2023*, ECF No. 218, at 32:15–17; *see* Decl., Ex. 4 at 8; Decl., Ex. 8 (Itemized Payment List) at 3.

(e) Assuming arguendo that Howard engaged in inequitable conduct, as alleged in the Complaint, the Trustee does not allege facts in the Objection that could establish such conduct, and even if he could allege such facts, the Claim cannot be equitably subordinated through the Objection. *See id.* ¶¶ 28–32.

## The Reply

In his Reply, the Trustee addresses the issues that Howard introduced in his Response in support of the Claim. In substance, the Trustee asserts that, contrary to Howard's contentions, the Claim is not prima facie valid because it failed to include documentation in support of the Claim as required by Bankruptcy Rule 3001(c), and because the Claim does not correlate to the Schedules. Reply ¶¶ 8–12. He also contends that the documents that Howard annexed to the Response fail to establish that he holds a claim against the Debtor's estate. Briefly, he asserts that (i) the documents do not show that Michael used the ConnectOne Loan proceeds for expenses associated with the Matrimonial Action (even as the "borrowers" under the loan were explicitly restricted to using the funds for business purposes, not personal obligations), (ii) there is nothing in the memo line of any of the Checks linking them to any alleged loan obligation owed by the Debtor, nor is it clear on whose behalf the payments were made or why; and (iii) the July 22 Letter does not evidence a loan by Howard to Michael, as it does not reference any specific debts or payments. *Id.* ¶¶ 13–15. Finally, he reiterates that by paying the ConnectOne Loan obligation post-petition, Howard was satisfying his own obligations under the ConnectOne Loan. *Id.* ¶ 16.

The Court considers those matters below.

## Discussion

### Whether the Court Should Disallow and Expunge the Claim Under Section 502(b)

Howard contends that, after the commencement of the Matrimonial Action, he determined that the Debtor did not have the financial wherewithal to cover the costs and expenses of the divorce proceedings. Decl. ¶ 4. He says that he took two actions to address that matter. First, in

September 2013, he executed the Business Loan Agreement as a co-borrower with the Debtor, and, jointly with Michael, obtained a $1 million Line of Credit, which, over time, increased to $2 million. *Id.*; Decl., Ex. 2. Second, he says that between April 27, 2017, and March 27, 2018, he issued the Checks payable to either Michael, Jennifer, or the Law Firm, aggregating $193,000, that he says were applied in satisfaction of the Debtor's alimony expenses and legal fees. Decl. ¶ 6; Decl., Ex. 4.

The Business Loan Agreement states that the loan proceeds can be used "solely for [Howard and Michael's] business operations, unless specifically consented to the contrary by [ConnectOne] in writing." Decl., Ex. 2 at 2. Howard has produced no such agreement. Still, he contends that Michael used the Line of Credit to pay the costs and expenses of his divorce. On June 27, 2018, Howard, as "co-borrower" under the ConnectOne Loan, paid off the then-existing balance of $2,003,305.56 under the Line of Credit. Decl. ¶ 5. He says that, over the life of the ConnectOne Loan, he paid a total of $2,533,252.61 in satisfaction of his obligations as a co-borrower under the loan. *See* Decl., Ex. 8 (Itemized Payment List). Howard maintains that 100% of those payments were in satisfaction of Michael's drawdowns of cash under the Line of Credit that he used to pay his personal expenses associated with the divorce, although he produced no evidence in support of that contention.

Howard argues that each of the payments aggregating the $2,533,252.61 that he made to ConnectOne in satisfaction of his obligations under the ConnectOne Loan and each of the nine Checks aggregating $193,000 constitutes a loan by him to Michael (together, the "Loans") and comprise the "Money loaned" to Michael that he seeks to recover under the Claim. In his Response, Howard submitted evidence of the activity in the account for the Line of Credit during

the period of 2013 through 2018.  *See* Decl., Ex. 3 (ConnectOne Loan Activity).[14]   However, Howard submitted no evidence to corroborate his assertion that Michael used the proceeds of the Line of Credit to satisfy costs and expenses associated with the divorce proceeding.  Moreover, the "memo" line on each Check is deleted or left blank, and Howard did not submit evidence supporting his assertion that the Checks were applied against debts owed by Michael in connection with the divorce proceeding.  *See* Decl., Ex. 4.

Michael has no obligation under the Business Loan Agreement or the Line of Credit to reimburse Howard for the payments which Howard made in satisfaction of his obligations as a co-borrower under the ConnectOne Loan, and Howard does not contend otherwise.  Howard says that Michael agreed to treat the Checks and Howard's payments of his own indebtedness under the ConnectOne Loan as loans to him from Howard.  *See* Response ¶ 23.[15]  As evidence of his loan agreement with Michael, Howard points to his handwritten letter to Michael dated July 22, 2015 (the "July 22 Letter")[16] that he submitted in the Response, and which he, his wife Nancy, and Michael signed, *see* July 22 Letter, as well as to "an itemized statement of principal amounts, interest, fees, expenses, and charges comprising the Loans" annexed to the Declaration as Exhibit 8

---

[14]    Howard submitted a summary of the activity under the Line of Credit for the period of 2013 through 2018.  It shows that, as of January 1, 2015, the loan balance under the Line of Credit was $1,215,763.76, and that from 2015 through 2018, an additional $923,317.79 was funded.  During that period, $340,692.27 in interest accrued, and $53,478.79 in "Late Fees/Other" were charged to ConnectOne.  *See* Decl. ¶ 5; Decl., Ex. 3.  He explained that he could not access records regarding account activity for the years 2013 and 2014 from ConnectOne.  He states that he was told that such records do not exist because ConnectOne has a seven-year retention policy.  Decl. ¶ 5.

[15]    In the Response, Howard asserts as follows:

> The Loans are comprised of both the Line of Credit, taken out in the name of both Howard and the Debtor, and the various Checks written by Howard.  Documentation evidencing the Line of Credit is attached to the Brown Declaration as Exhibits 1–3, and documentation evidencing the Checks is attached to the Brown Declaration as Exhibit 4.

Response ¶ 23.

[16]    The July 22 Letter is annexed as Exhibit 5 to the Declaration.

(the "Itemized Payment List").  Response ¶ 23.  The Itemized Payment List consists of a list, in

chronological order, of the Checks and the principal, interest, and late fees that Howard paid in

satisfaction of his liability under the ConnectOne Loan.  *See* Decl., Ex. 8.

Howard describes the July 22 Letter as "[a]n executed written agreement between the

parties describing, among other things, the basis for the Loans, the terms of the Loans, and the

Debtor's obligation to pay Howard back for the Loans."  Response ¶ 23.  In its entirety, the letter

states, as follows:

> Michael, your mother and I are making you interest bearing loans as you need funds
> to support your divorce, both for legal fee expenses, alimony expenses and other
> related expenses.  Most importantly this includes my personal guarantees at
> ConnectOne Bank plus [the] monthly interest charges should you fail to make good
> on your loans.  The interest rate will be set at the mid-term applicable rate in the
> month the loan is made.
>
> As collateral for these loans you agree to pay us any proceeds from the sale of your
> assets.  Specifically as these assets are sold I expect 25% of these proceeds to be
> allocated to the repayment of your loans from us, and any further loans including
> interest owed.
>
> If after 9 years these loans are not fully paid back including interest you will turn
> over enough assets to satisfy your loan obligations.  Your current asset[s] that I am
> aware of are your investments in (Brown RI) H. Touch, Propel . . . Perky Jerky,
> your bank stock and your investment in H&S Investment Co.

July 22 Letter.

Howard filed the Claim on Official Form 410.  As relevant, the form directs claimants to

"[a]ttach redacted copies of any documents supporting the claim required by Bankruptcy

Rule 3001(c)."  Claim No. 7-1, Part 2, Item 8.  Howard failed to attach a narrative or any

documents in support of the Claim.  The Trustee maintains that the Court should expunge the

Claim pursuant to section 502(b)(1) because the Claim is not prima facie valid, it fails to comply

with Bankruptcy Rule 3001(c), and Howard has not met his burden of demonstrating that the Claim

is enforceable against the Debtor.  Objection ¶ 9; Reply ¶¶ 9–15.  Howard opposes such relief.
The Court considers those matters below.

"When a debtor declares bankruptcy, each of its creditors is entitled to file a proof of
claim . . . against the debtor's estate."  *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*,
549 U.S. 443, 449 (2007).  Section 101(5) of the Bankruptcy Code defines the term "claim" as
either a "right to payment, . . . or right to an equitable remedy for breach of performance if such a
breach gives rise to a right to payment . . . ."  11 U.S.C. § 101(5).  The Bankruptcy Rules require
that "[a] proof of claim shall conform substantially to the appropriate Official Form."  Fed. R.
Bankr. P. 3001(a).  The rules further direct that "when a claim . . . is based on a writing, a copy of
the writing shall be filed with the proof of claim.  If the writing has been lost or destroyed, a
statement of the circumstances of the loss or destruction shall be filed with the claim."  Fed. R.
Bankr. P. 3001(c)(1).  "A proof of claim executed and filed in accordance with [the Bankruptcy
Rules] shall constitute prima facie evidence of the validity and amount of the claim."  Fed. R.
Bankr. P. 3001(f); *see also In re New Century TRS Holdings, Inc*., 495 B.R. 625, 633 (Bankr. D.
Del. 2013) ("Bankruptcy Rule 3001(f) provides that a proof of claim executed and filed in
accordance with the rules of procedure, *i.e.*, includes the facts and documents necessary to support
the claim, constitutes *prima facie* evidence of the validity and amount of the claim.").

Pursuant to section 502(a) of the Bankruptcy Code, a claim that is properly filed under
Rule 3001 and section 501 of the Bankruptcy Code is deemed allowed unless a party in interest
objects.  11 U.S.C. § 502(a); *see also In re Roman Cath. Diocese of Rockville Ctr.*, 651 B.R. 146,
158 (Bankr. S.D.N.Y. 2023) ("The proof of claim, if filed in accordance with section 501 and the
pertinent Bankruptcy Rules, constitutes *prima facie* evidence of the validity and amount of the
claim under Federal Rule of Bankruptcy 3001(f) and Code section 502(a)." (quoting 4 COLLIER

ON BANKRUPTCY ¶ 502.02[3][e] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2019))); *In re Jorczak*, 314 B.R. 474, 481 (Bankr. D. Conn. 2004) ("A proof of claim, if it is executed and filed in accordance with the Federal Rules of Bankruptcy Procedure, constitutes prima facie evidence of the validity and amount of that claim, Fed. R. Bankr. P. 3001(f), and is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a)." (quoting *In re Rally Partners, L.P.*, 306 B.R. 165, 168–69 (Bankr. E.D. Tex. 2003))).

In the face of an objection to a properly filed claim, the evidentiary effect of Rule 3001(f) remains in force. "To overcome [the] prima facie evidence, the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000). If this is done, the burden shifts back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Tr. (In re Motors Liquidation Co.)*, No. 12-cv-6074, 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (quoting *In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009)).[17]

In contrast, where a claimant fails to allege the facts and annex the documents necessary to support its claim, and thereby runs afoul of Rule 3001, the claim is not entitled to the presumption of prima facie validity. *See In re AMR Corp.*, No. 11-15463, 2021 WL 5570293, at *2 (Bankr. S.D.N.Y. Nov. 29, 2021) ("When a claimant fails to comply with the Rule 3001

---

[17] In *In re Live Primary, LLC*, 626 B.R. 171 (Bankr. S.D.N.Y. 2021), Chief Judge Glenn explained:

> The purpose behind Bankruptcy Rule 3001 and Official Form 410's documentary requirements and the shifting burden of proof is two-fold. First, the attachments required by the Bankruptcy Rule 3001 and Official Form 410 are intended to enable the debtor or trustee to evaluate the claim's amount and validity and to challenge portions of the claim that may be inaccurate. Second, the rules governing claims are intended to simplify the claims allowance process and provide a fair and inexpensive process for all parties.

*Id*. at 189 (citation omitted).

14

documentation requirements when submitting a proof of claim, the claimant is not entitled to *prima facie* validity of the claim."); *In re Lundberg*, No. 02-34542, 2008 WL 4829846, at *2 (Bankr. D. Conn. Oct. 27, 2008) ("If, however, the claimant fails to allege facts in the proof of claim that are sufficient to support the claim, *e.g.*, by failing to attach sufficient documentation to comply with Fed. R. Bankr. P. 3001(c), the claim is . . . deprived of any *prima facie* validity which it could otherwise have obtained.").    In those cases, "[a]bsent the application of the presumption, the burden of going forward and proving its claim by a preponderance of the evidence remains on the claimant." *In re Kincaid*, 388 B.R. 610, 614 (Bankr. E.D. Pa. 2008).

Section 502(b) sets forth the grounds for disallowing a properly filed proof of claim. *See* 11 U.S.C. § 502(b).    "[W]here a party in interest objects, the court 'shall allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions enumerated in § 502(b)." *Travelers*, 549 U.S. at 449 (quoting 11 U.S.C. § 502(b)).    The Trustee contends that the Court should disallow and expunge the Claim pursuant to section 502(b)(1).    Pursuant to that section, a court will disallow a claim if it "is unenforceable against the debtor and property of the debtor, under . . . appliable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1); *see Cadle Co. v. Mangan (In re Flanagan)*, 503 F.3d 171, 179 (2d Cir. 2007) (explaining that section 502(b)(1) disallows a claim "to the extent that it is 'unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured.'" (quoting 11 U.S.C. § 502(b)(1))).    The Court first considers the Trustee's argument that it should expunge the Claim pursuant to section 502(b)(1) because Howard failed to annex documents in support of the Claim.    Objection ¶ 9.

Howard acknowledges that he did not attach any documentation to the Claim, but he asserts that his failure to do so is no basis for sustaining the Objection since "[n]either the Trustee nor his

counsel requested any documentation from [him] relating to the Claim prior to filing the Objection." Response ¶ 13; *see also* Decl. ¶ 11. That contention fails because the Trustee was under no duty to ask Howard to produce such documentation before he filed the Objection. It was Howard's responsibility to comply with Bankruptcy Rule 3001(c) and Official Form 410 and to file documentation in support of the Claim. He failed to do so. Howard also says that he did not file documents with the Claim "given the personal nature of the transactions supporting the Claim." Response ¶ 13; *see also* Decl. ¶ 11. That excuse rings hollow and does not excuse his failure to comply with the rules, given that, as explained below, Howard says that the Debtor purportedly disclosed the substance of the "transactions supporting the claim" in his Schedules, and Howard readily annexed the documents to his Declaration in support of his Response to the Objection.

Form 410 "complement[s]" Rule 3001(c). *See In re Burkett*, 329 B.R. 820, 826 (Bankr. S.D. Ohio 2005). In part, it directs a claimant to "[a]ttach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements." Claim No. 7-1 at 1. Howard says that the July 22 Letter serves as the basis for his claim for "Money loaned" to Michael in his proof of claim. To comply with Rule 3001(c), it was incumbent upon Howard to have annexed documents evidencing his loan agreement with Michael. Howard's failure to do so runs afoul of Bankruptcy Rule 3001(c). *See, e.g.*, *In re Benyamin*, 587 B.R. 243, 250–51 (Bankr. S.D.N.Y. 2018); *In re Live Primary, LLC*, 626 B.R. 171, 196 (Bankr. S.D.N.Y. 2021). However, contrary to the Trustee's contention, Howard's violation of the Bankruptcy Rules is not grounds, per se, for disallowing and expunging the Claim. *See In re Porter*, 374 B.R. 471, 480 (Bankr. D. Conn. 2007) ("It is well established that the only substantive grounds for disallowance of a claim are expressly set forth in the Bankruptcy Code. Accordingly, lack of the documentation required

16

by Rule 3001(c) (which is, *a priori*, a mere procedural rule) is not a *substantive* ground for

disallowing a claim." (citation omitted)).   However, it can be a ground for denying prima facie

validity to the Claim.   *See In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010); *In re*

*AMR Corp.*, 2021 WL 5570293, at *2; *In re Lundberg*, 2008 WL 4829846, at *2.

Howard says that the Claim is prima facie valid, even without the documentation called for

under Rule 3001(c).  Response ¶ 21.  The scheduling of a debt is a judicial admission by the debtor.

*See, e.g.*, *In re Bohrer*, 266 B.R. 200, 201 (Bankr. N.D. Cal. 2001) ("Statements in bankruptcy

schedules are executed under penalty of perjury and when offered against a debtor are eligible for

treatment as judicial admissions." (citing *Mann v. Shepard (In re Gervich)*, 570 F.2d 247, 253

(8th Cir. 1978))).  While the Debtor's admissions in his Schedules are not binding on the Trustee,

the Schedules "constitute[] a sworn statement and admission against interest, which is strongly

probative of the claim's validity."  *In re Live Primary, LLC*, 626 B.R. at 189.  Howard contends

that the Claim is prima facie valid because it is based on the same debts that the Debtor has listed

in Items 4.5 and 4.7 of Schedule E/F.  Response ¶ 21 (quoting *In re Burkett*, 329 B.R. at 829 ("If

a proof of claim correlates to a debt listed by the debtor in his or her schedules, this may be

sufficient, by itself, to establish the prima facie validity of the proof of claim."); *In re Jorczak*,

314 B.R. at 481–82 (noting that the scheduling of a debt is a judicial admission by the debtor)).

The Court finds no merit to that argument.

Howard misplaces his reliance on *Burkett* and *Jorczak*.  In those cases, the courts found

that a claim filed without the documentation called for under Rule 3001(c) will be treated as prima

facie valid where:

> (i) the debtor schedules the claim in a sum equal or close to the amount stated in
> the proof of claim and specifically identifies the claim by reference to an underlying
> agreement, account, or account number;
>
> (ii) the debtor schedules the claim as noncontingent, liquidated and undisputed; and

17

(iii) the claim is not the subject of an objection to the validity, ownership or amount of the claim.

*See In re Burkett*, 329 B.R. 829–30; *In re Jorczak*, 314 B.R. at 483.  The *Burkett* court overruled a chapter 7 trustee's objection to the claims of three credit card claimants based solely on their failure to comply with Rule 3001(c), where the debtor identified each claim in its schedules and there was no factual dispute as to the validity, ownership, or amount of the claim.  *In re Burkett*, 329 B.R. at 829.  The court found that the failure to comply with Rule 3001(c) is not a ground to disallow a claim "[i]f there is no underlying factual dispute as to the validity, ownership or amount of a claim, [since] a debtor or trustee has no basis for filing an objection for lack of documentation unless the debtor or trustee alleges a basis that would require reduction or disallowance under § 502." *Id.*  Moreover, the *Burkett* court reasoned that the "sworn statement and admission against interest" in the debtor's schedules is "strongly probative of the claim's validity," *id.*, and that "[where] there is no legitimate dispute about [a] claim's validity or amount, there is no reason to penalize a claim holder for fail[ing] to meet all of the technical requirements of the bankruptcy rules intended to govern the fair determination of disputes." *Id*. (citing *In re Shank*, 315 B.R. 799, 812 (Bankr. N.D. Ga. 2004)).  In *Jorczak*, the debtor objected to proofs of claim filed by credit card claimants, banks, financial institutions on the grounds that the claimants failed to annex documents in support of the claims. *See In re Jorczak*, 314 B.R. at 477–79.  The claimants did not appear at the hearing on the objections.  At that hearing, the issue before the court was whether the claims, as filed, were presumptively prima facie valid. *Id.* at 479.  The debtor scheduled each of the claims that was the subject of an objection, in an amount equal to (or close to) the amount set forth in the claim, as "noncontingent, liquidated and undisputed."  In addition, the debtor identified each creditor by name, and referred to the underlying agreement, including the debtor's account number, or other information. *Id*. at 483–85.  The court found in that "unusual" context, that the

18

proofs of claim, when considered with the relevant admissions in the debtor's schedules, were prima facie valid, even without supporting documentation. *Id.* at 483.

Those cases are plainly distinguishable from this one. In contrast with *Burkett*, here, the Trustee's Objection to the Claim is substantive in nature, as he challenges the validity and amount of the Claim. Objection ¶¶ 9–12; Reply ¶¶ 11–17. The Schedules are not probative of the validity of the Claim because they do not correlate to the Claim. Michael did not acknowledge the Claim in his Schedules. He did not list Howard as a creditor under the July 22 Letter, and he did not list the July 22 Letter as an agreement giving rise to a claim against him. He scheduled "Connect[O]ne Bank" as an unsecured creditor holding a $2 million claim under the ConnectOne Loan and identifies Howard as his "codebtor"—not as his guarantor—under that loan. *See* Schedule E/F, Item 4.5; Schedule H, Item 3.1. Michael identifies "Howard and Nancy Brown" in his Schedules as unsecured creditors holding a $500,000 claim. However, he does not cite to an agreement with Howard and Nancy. He merely states that the basis of the claim is that they "pay[] interest on commercial loan and lend[] money for lawyers and expenses," and that the claim accrued on June 1, 2015. That is a far cry from the detailed listing of the claims in *Jorczak*. Michael's admissions in the Schedules do not substantiate Howard's assertion that those schedules establish a prima facie case of Michael's liability to him for the "Money loaned" under the Claim.

In filing the Claim, Howard did not comply with Bankruptcy Rule 3001(c), as he failed to submit a narrative or documents in support of the Claim. The Trustee's objection to the Claim is substantive, not procedural, and the Claim plainly does not correlate to the debts scheduled by Michael. The *Burkett* court cautioned that "if a proof of claim lacking proper attachments does not correlate to a debt scheduled by the debtor, or aspects of the claim differ from the scheduled debt, this may give rise to a valid objection by the debtor or trustee for lack of verification of

19

ownership and/or the amount of the claim." *In re Burkett*, 329 B.R. at 829. That is the case here, as the Trustee contests both the validity and amount of the Claim. The Court finds that the Claim is not prima facie valid. *See id.* at 830 ("If a creditor whose claim cannot be fully substantiated against a debtor's schedules wishes to dispense with this risk of an objection and a hearing requiring the creditor to proceed with the burden of going forward, the creditor need only attach the required documents described in Rule 3001 and Official Form 10 that establish the claim's prima facie validity.").

In the face of the Objection, and because the Claim is not entitled to prima facie validity, Howard bears the burden of demonstrating the validity and amount of the Claim by a preponderance of the evidence. *In re Kincaid*, 388 B.R. at 614; *see also In re Helios & Matheson Analytics, Inc.*, 633 B.R. 115, 119 (Bankr. S.D.N.Y. 2021) (holding that, where a debtor rebuts the presumption of the validity of claim, the claimant must then prove by a preponderance of the evidence that the Court should allow the claim). As the Debtor's father, Howard is an "insider" of the Debtor. *See Warren v. Society Corp. (In re Perks)*, 134 B.R. 627, 628 (Bankr. S.D. Ohio 1991) ("The Debtor's parents are insiders pursuant to 11 U.S.C. § 101(31)(A)(i)."); *see also* 11 U.S.C. § 101(31)(A)(i) (defining "insider" as to include, "if the debtor is an individual," a "relative of the debtor"); *id.* § 101(45) (definition of the term "relative"). Courts apply a "heightened scrutiny" test in assessing the bona fides of a transaction among a debtor and an insider of the debtor. *See In re MSR Hotels & Resorts, Inc.*, No. 13-11512, 2013 WL 5716897, at *1 (Bankr. S.D.N.Y. Oct. 1, 2013) ("[C]ourts in this jurisdiction have generally applied a heightened standard of scrutiny when the transaction [in] question is with an insider of the debtor." (citing *In re Innkeepers USA Tr.*, 442 B.R. 227, 231 (Bankr. S.D.N.Y. 2010))). For the reasons discussed below, the Court finds that Howard has not met his burden of proving the merits of the Claim.

20

Section 502(b)(1) of the Bankruptcy Code provides that a court may disallow and expunge a claim that is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law . . . ." 11 U.S.C. § 502(b)(1). Whether a claim is allowable under section 502(b)(1) "generally is determined by applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006). "What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition is filed, is a question which, in the absence of overruling federal law, is to be determined by reference to state law." *In re Hess*, 404 B.R. 747, 749 (Bankr. S.D.N.Y. 2009) (quoting *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161 (1946)); *see also Fisher Bros. Mgmt. Co. LLC v. Genco Shipping & Trading Ltd. (In re Genco Shipping & Trading Ltd.)*, 550 B.R. 676, 680 (S.D.N.Y. 2015) ("One basis for sustaining an objection and disallowing a claim is that 'such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . .' 'Applicable law' most often refers to state law." (omission in original) (footnotes omitted) (first quoting 11 U.S.C. § 502(b)(1), then citing *In re Yasin*, 179 B.R. 43, 50 (Bankr. S.D.N.Y. 1995))).

Howard says that the July 22 Letter constitutes an enforceable loan agreement with Michael. However, he failed to meet his burden of proving as much. First, the plain language of the letter belies Howard's characterization of the letter. It does not provide that Howard is advancing any sums to Michael, and in executing the letter, Michael did not acknowledge any liability to Howard. Rather, in the letter, Howard says that he and Michael's mother "are making you interest bearing loans as you need funds to support your divorce, both for legal fee expenses, alimony expenses and other related expenses" and that "[t]he interest rate [on those loans] will be set at the mid-term applicable rate in the month the loan is made." July 22 Letter. Howard's

recitation in the letter that the "interest bearing loans . . . include[] my personal guarantees at ConnectOne Bank" lends no support to his characterization of the letter because he was a co-borrower, not a guarantor, under the ConnectOne Loan. *Id.* Indeed, all of the payments that Howard made on account of the ConnectOne Loan were to his benefit, as the co-borrower under the loan who had pledged his home as collateral for that loan. At best, the July 22 Letter is a declaration by Howard that he was willing to make loans to Michael, albeit at some undefined point in the future, in an undefined principal amount, and at an undefined interest rate.

Moreover, Michael clearly did not treat the letter as a loan agreement, as he did not schedule a claim in favor of Howard under the July 22 Letter. Howard apparently did not protest Michael's failure to do so. Further, as noted, Howard provided no evidence that Michael used the proceeds of the Checks or the ConnectOne Loan proceeds to pay costs and expenses associated with the Matrimonial Action.

Finally, Howard provided no legal support or analysis under state or federal law for his contention that the July 22 Letter constitutes an enforceable loan agreement. However, he did dispute the Trustee's assertion that the Court should treat the payments underlying the Claim as gifts to Michael. Objection ¶ 9. Howard points to the fact that he did not pay gift tax on his ConnectOne Loan payments as evidence that those payments were not gifts to Michael. Response ¶¶ 7, 24; Decl. ¶ 7. However, Howard presumably did not pay any gift tax on those payments because no such taxes are assessed on funds used to pay off a loan. In support of his contention that "[a] familial relationship, without more, is not a basis, legal or otherwise, to disallow a claim or to establish that a loan is a 'gift,'" Howard cites to *In re Howland*, 545 B.R. 653 (Bankr. D. Or. 2015). Response ¶ 24. In that case, the chapter 7 debtor's father filed an unsecured claim against the debtor based on cash advances by the father to his son, which the

22

father characterized as loans to the debtor.  A creditor objected to the claim the grounds that those advances were gifts, not loans.  *See In re Howland*, 545 B.R. at 655.  The court found that the promissory notes executed by the father and son which the debtor and the father had created in attempt to document the transactions were "problematic and neither probative nor enforceable as loan documents," *id.* at 656, and that there was no enforceable written loan agreement between them.  *Id.* at 657.  However, the court nonetheless determined that, based on the facts submitted by the father and son in support of the claim, under California law, the father held an enforceable agreement against his son.  *Id.*

*Howland* provides no support for Howard.  The Claim is based primarily on the payments that Howard made to ConnectOne in satisfaction of his obligation to the bank under the ConnectOne Loan, not on cash advances that Howard made to Michael.  Howard and Michael did not execute a document that purports to be a promissory note, and there is no evidence in the record that supports Howard's assertion that Michael used the funds from the Line of Credit to pay his personal expenses.  Finally, Howard provided no legal analysis in support of his reliance on *Howland*, and he plainly cannot demonstrate that California law is applicable in this matter.

Howard failed to meet his burden of proving, by a preponderance of the evidence, that he advanced sums to Michael and that Michael used such sums to pay costs and expenses associated with the Matrimonial Action, pursuant to an enforceable loan agreement.  He has failed to meet his burden of proving that the Claim is valid and enforceable against the Debtor.  Accordingly, the Court disallows and expunges the Claim pursuant to section 502(b)(1) of the Bankruptcy Code.[18]

---

[18]    After the hearing on the Objection, Howard's counsel sent a letter to the Court (the "Howard Letter," ECF No. 216) in which he requested leave to "submit[] documentary or testimonial evidence regarding the Debtor's receipt and use of [the proceeds of the alleged loans]," and to "file a sur-reply to the Reply."  *See* Howard Letter at 1.  He argued that the Court should grant Howard leave to submit documentary or testimonial evidence from the Debtor because "Local Bankruptcy Rule 9014-2 precluded [Howard] from submitting documentary or testimonial evidence regarding the Debtor's receipt and use of such funds."  *Id.*  He said that the Court should grant Howard leave to file a

**Whether The Court Should Disallow the Claim Under Section 502(d)**

As relevant, section 502(d) of the Bankruptcy Code states:

> [T]he court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

11 U.S.C. § 502(d). Accordingly, application of this section precludes an entity that has received a voidable transfer from sharing in the distribution of estate assets unless and until it returns the transferred property to the estate. *See U.S. Lines (S.A.), Inc. v. United States. (In re McLean Indus., Inc.)*, 30 F.3d 385, 388 (2d Cir. 1994) ("Section 502(d) requires a court to disallow an entity's claim against the bankruptcy estate if the estate is entitled to recover property from that entity, such as because of a voidable preference, but that entity has failed to first transfer this property back to the bankruptcy estate."); *Germain v. Conn. Nat'l Bank*, 988 F.2d 1323, 1327 (2d Cir. 1993) ("Under the Bankruptcy Code a court must disallow 'any claim of any entity from which property

---

sur-reply to the Reply because "the Trustee raised new arguments in the Reply." *Id.* The Trustee opposed the requests. *See* Trustee Letter, ECF No. 217.

The Court finds no grounds to grant Howard the relief he seeks in the letter. Local Rule 9014-2 states that, with certain irrelevant exceptions, "[t]he first scheduled hearing in a contested matter will not be an evidentiary hearing at which witnesses may testify . . . ." Local Bankruptcy Rule 9014-2. The rule governs the conduct of the first scheduled hearing in a contested matter, not the documentary evidence that a party in interest can submit in connection with a contested matter. The rule did not bar Howard from submitting documentary evidence, including sworn testimony, from the Debtor in support of the Claim and in opposition to the Objection. Apparently, he elected not to do so, even as he submitted documents and his sworn testimony in his Response. In his Reply, the Trustee did not raise "new arguments" in support of the Objection. In the Objection, the Trustee challenged the validity and amount of the Claim on the grounds that Howard failed to provide any documentation in support of the Claim and failed to demonstrate that he had a valid and enforceable loan agreement with Michael. He made the same arguments in the Reply and addressed the same evidentiary issues that he raised in Objection, in response to the documents Howard submitted in the Response.

The Court denies Howard's request to supplement the evidentiary record of this matter and to file a sur-reply to the Reply.

is recoverable' because of a preferential transfer or fraudulent conveyance." (quoting 11 U.S.C. § 502(d))).

This provision is not intended to be punitive.  "[U]nder the plain language of the statute, Section 502(d) simply provides that until a creditor pays what it owes to an estate, any claim it may have is disallowed.  That is all."  *RNI-NV Ltd. P'ship v. Field (In re Maui Indus. Loan & Fin. Co.)*, 580 B.R. 886, 900 (D. Haw. 2018).   In that way, it "serves the policy goal of ensuring compliance with judicial orders."  *In re Vivaro Corp.*, 541 B.R. 144, 154 (Bankr. S.D.N.Y. 2015) (citing 4 COLLIER ON BANKRUPTCY ¶ 502.05[1]).

Application of section 502(d) is not triggered until a claimant is adjudicated to have received a voidable transfer from a debtor and, after a reasonable time period, has not returned the transferred property to the estate.  *See Campbell v. United States (In re Davis)*, 889 F.2d 658, 662 (5th Cir. 1989) ("This section is designed to be triggered after a creditor has been afforded a reasonable time in which to turn over amounts adjudicated to belong to the bankruptcy estate.");  *see also Seta Corp. of Boca, Inc. v. Atl. Comp. Sys. (In re Atl. Comp. Sys.)*, 173 B.R. 858, 862 (S.D.N.Y. 1994) (there must be "some sort of determination of the claimant's liability before its claims are disallowed, and in the event of an adverse determination, the provision of some opportunity to turn over the property").

In the Adversary Proceeding, the Trustee does not hold a judgment against Howard under any of the fraudulent conveyance counts in the Complaint.  Accordingly, it is premature to consider the Trustee's request for relief under section 502(d).  *See Mktg. Res. Int'l Corp. v. PTS Corp. (In re Mktg. Res. Intern. Corp.)*, 35 B.R. 353, 356 (E.D. Pa. 1984) ("[A]pplication of § 502(d) is premature since judgment has not yet been entered on the debtor's actions under §§ 547 and 542.");  *In re Lids Corp.*, 260 B.R. 680, 684 (Bankr. D. Del. 2001) ("Here, the Debtor has merely

commenced an adversary proceeding . . . . Until the Debtor obtains a judgment . . . section 502(d)

is not applicable."). The Court denies the Trustee's request to disallow the Claim under section

502(d), without prejudice, and pending the resolution of the Adversary Proceeding. To the extent

the Claim is allowed in any amount, in the interim, it will remain a disputed claim until such time

that the Adversary Proceeding is finally resolved.

**Whether the Court Should Grant the Trustee Relief Under Section 510(c)**

Finally, the Trustee seeks to subordinate the Claim to other unsecured claims pursuant to

section 510(c) of the Bankruptcy Code. The Trustee argues that the Court should subordinate the

Claim because Howard is an insider who was engaged in inequitable conduct that has resulted in

injury to competing claimants. Objection ¶ 11.

In relevant part, section 510(c)(1) states that "after notice and a hearing, the court may—

under principles of equitable subordination, subordinate for purposes of distribution all or part of

an allowed claim to all or part of another allowed claim . . . ." 11 U.S.C. § 510(c)(1). Bankruptcy

Rule 7001(8) states that, with an irrelevant exception, an adversary proceeding is "a proceeding to

subordinate any allowed claim or interest . . . ." Fed. R. Bankr. P. 7001(8). Bankruptcy

Rule 3007(b) states that "[a] party in interest shall not include a demand for relief of a kind

specified in [Bankruptcy] Rule 7001 in an objection to the allowance of a claim, but may include

the objection in an adversary proceeding." Fed. R. Bankr. P. 3007(b). Accordingly, taken

together, Rules 3007(b) and 7001(8) require that an adversary proceeding be the vehicle to

subordinate an allowed claim. *See In re J.S. II, L.L.C.*, 389 B.R. 570, 586 (Bankr. N.D. Ill. 2008)

("equitable subordination must proceed via an adversary proceeding, as required under Fed. R.

Bankr. P. 3007(b) and 7001(8)"); *Protarga, Inc. v. Webb (In re Protarga, Inc.)*, No. 03-12564,

2004 WL 1906145 at *3 (Bankr. D. Del. Aug. 25, 2004) ("Claims for equitable subordination must

be brought as a separate adversary proceeding pursuant to Rule 7001(8) of the Federal Rules of Bankruptcy Procedure.").

The Claim is not an allowed claim, and the Trustee has not commenced an adversary proceeding to subordinate the Claim.  The Court denies the Trustee's request to subordinate the Claim, without prejudice to his right to seek such relief pursuant to an adversary proceeding, should the Claim be allowed under section 502 of the Bankruptcy Code.

## Conclusion

Based on the foregoing, the Court:

(i) Sustains the Objection pursuant to section 502(b) of the Bankruptcy Code and disallows and expunges the Claim.

(ii) Denies the Trustee's request to disallow the Claim under section 502(d) of the Bankruptcy Code, without prejudice, and pending the resolution of the Adversary Proceeding.  To the extent the Claim is allowed in any amount in the interim, it will remain a disputed claim until such time that the Adversary Proceeding is finally resolved.

(iii) Denies the Trustee's request pursuant to section 510(c) of the Bankruptcy Code to subordinate the Claim, without prejudice to his right to seek such relief pursuant to an adversary proceeding, should the Claim be allowed under section 502 of the Bankruptcy Code.

IT IS SO ORDERED.

Dated: New York, New York
      September 15, 2023

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge